IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT ~~OF COLUMBIA~~ of Kansas
~~WASHINGTON DIVISION~~

| | | |
|---|---|---|
| **MANETIRONY CLERVRAIN,**<br>Plaintiff,<br>Vs.<br>**JEFF SESSIONS,** et al.<br>ATTORNEY GENERAL OF THE UNITES STATES<br>Respondent. | **Case No.:**<br>18-3039-SAC | FILED<br>FEB 12 2018<br>Clerk, U.S. District Court<br>By: Deputy Clerk |

# I. MEMORANDUN OF LAW IN SUPPORT OF THE PLAINTIFF'S FEDERAL DECLARATORY JUDGMENT ACT, PURSUANT TO 28 U.S.C. § 2201

Comes Now, the plaintiff **Manetirony Clervrain,** in propia persona and moves this honorable court pursuant to 28 U.S.C. § 2201, for the issuance of the Declaratory Judgment Act ("DJA"), the civil right action for deprivation of rights;the Federal Tort Claims Act ("FTCA"), the provisions of the administrative procedures act ("APA") and for the writ of mandamus ("WMA"), against the respondents who are: **Mr. Jeff Sessions, Mrs. Loretta Lynch; Mr. Eric Holder,** Attorneys General of the united states ("AG"), **Mr. John Kelly; Mr. Jeh Charles Johnson;** Secretary of Homeland Security ("DHS"); **Mr. Rex Tillerson; Mr. John Kerry,** Secretary of states ("SOS"); **Mr. John Morton;** Director of the ("USCIS"); **Mrs. Katherine Patterson,** Field office Director of the ("USCIS"); **Mrs. Brett H. Lassen** the Field Director of the ("USCIS"); **J. Tamar Velasquez,** officer at the ("USCIS"); **Mr. Nishan. C Mahendran** at the law office of Nishan C. Mahendran, P.A.; **Mr. Charles Samuel,** Director of the ("BOP"); **Mrs. Donna Mellendick,** Administrative Private Management Branch ("PMB"); and **Mr. Ian Conner,** Administration National Inmates Appeals ("ANIA") and Direct the respondents to show cause why the court should defer from declare the rights...of any interest plaintiff seeking in such declaration, in particular he is seeking the denial of his application for naturalization in violation of the constitution, for deterring statutory violations, and or the claim challenging the execution, or the manner in which the denial was taken in placed in violation of all requirements statutory mandate under 8 C.F.R. § 316.2 (a) (7)

and 316.10 (a) (1), (a) (2) and (b) (3) (III).In support thereof, plaintiff states the following facts:

## II. THE CASE OF AN ACTUAL CONTRAVERSEY

It should be noted that the declaratory judgment act, 28 U.S.C. § 2201 (a), allows a court to enter a declaratory judgment by providing that, in such case of actual controversy within its jurisdiction …any court of the united states ...may declare the rights and other legal relations of any interest plaintiff seeking such a declaration, whether or not further relief is or could be sought. Armstrong World Industries v. Adams, 961 F.2d 405, 412 (3d Cir.1992).The act to serve to avoid accrued of avoidable damages to one not certain of his rights and to afford him and early adjudication without waiting until his adversary should see fit begin suit after damages has accrued. Travelers Insurance Company v. Davis, 490 F.2d 536 (3d Cir. 1974) (quotation omitted), the phrase case of actual controversy in [declaratory judgment] acts refers to the type of case and controversy that are justifiable under article III, Wade, 504 U.S. At 185-186, therefore, this particular court has jurisdiction because the proceeding was changed radically by the Immigration and nationality act (INA), § 1503 (a) of title 8 authorizes, with certain exceptions an action for declaratory judgment under 28 U.S.C. § 2201 by the plaintiff claiming to be a "U.S National Status", who is in the united states by allowing him, who has been denied rights and privileges on the basis of non-nationality to file a declaratory judgment action for a de novo determination of his nationality. Vance v. Terrazas, 444 U.S. 252, 264-70.See e.g. Whitehead v. Haig, 794 F.2d 115, 119 (3d Cir.1986).A suit under § 1503 (a) is not for review of the agency action, rather, § 1503 (a) authorizes a de novo judicial determination of the status of the plaintiff as a "United states National".Richards v. Secretary of State, 752 F.2d 1413, 1417 (9th Cir.1985).In action under § 1503 (a), the burden of proof is on the plaintiff to prove that, he is a "National of the united states";De Vargas v. Brownell, 251 F.2d 869, 870 (5th Cir.1958)("stating that once the court determines, on the evidence presented whether the plaintiff either is, or is not a "U.S National", the inquiry is at the end").Hizam v. Kerry, 747 F.3d 102, 108 (2nd Cir.2014) (concluding that the only remedy provided by § 1503 (a) is a declaration that plaintiff in this case is a "U.S National."); De Vargas v. Brownell, 251 F.2d 869, 871 (5th )

# III. ARTICLE STANDING REQUIREMENTS

Article III limits the federal judicial power to the resolution of "cases" and "controversies".U.S Constitution., art III § 2.One element of the case -or controversy requirement is that the plaintiff must establish that he as standing to sue. Raines v. Byrd, 521 U.S. 811, 819-20, (1997).Article III standing is a "threshold jurisdictional requirement" for every case in federal court. Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 119 (3d Cir.1997)."The plaintiff must demonstrate standing for claims he seeks to press". Davis v. Fed. Election Comm'n, 554 U.S. 724.Article standing has three requirement elements: 1) and injury in fact; 2) a causal connection between the injury and the conduct complained of-the injury has to be the fairly traceable to the challenged action of the respondents, and not the result of the independent action of some third party not define the court, and 3) a showing that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. New Jersey Physicians, Inc. v. President of the United States, 653 F.3d 234, 237 (3d Cir.2011).In the injury -in fact requirement, the third circuit court of appeals has explained that plaintiff must allege an injury that is both 1) "concrete and particularized" and 2) actual or imminent, not conjectural or hypothetical. Each of these definitional stands imposes unique constitutional requirements. Injury is concrete, if it is real, or distinct and palpable as opposed to merely abstract, while an injury is sufficient particularized, if it effects the plaintiff in a personal and individual way. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 & n. 1, 112 S. Ct. 2130, 119 L. Ed.2d 351 (1992) The second requirement -actual, or imminent, not conjectural or hypothetical -makes plain that if a harm is not presently, or actually occurring, the alleged future injury must be sufficiently immense in somewhat elastic, but requires, at very least that plaintiff demonstrate a realistic danger of sustain a direct injury. Littleton, 414 U.S. at 494,in other words, there must be a realistic chance or a genuine probability-that a future injury will occur in order for that injury to be sufficiently imminent. Li v. Att'y Gen. of the U.S., 400 F.3d 157, 164 (3d Cir.2005).The essence of the standing inquiring is whether the plaintiff seeking to invoke the court's jurisdiction have alleged such a

the standing inquiring is whether the plaintiff seeking to invoke the court's jurisdiction have alleged such a personal stake in the outcome of the controversy as to assure the concrete adverseness which happens the presentation of issues upon which the court so largely depends for illumination of difficulty constitutional questions. Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 93-94

## A. ISSUANCE OF THE ADMINISTRATIVE ACT ("APA")

It authorizes Judicial review of final agency action when a relevant Administrative agency statutory provision does not directly provide for judicial review without a statutory provision or a final agency action, However, a court lacks subject matter jurisdiction over an ("APA") claim. Airlines, Inc. v. Herman, 176 F.3d 283, 293 (5th Cir.1999).Therefore, when consider the ripeness of a dispute in the Administrative context, the court must determine whether there is final agency action, in such the elements to establish the ripeness of a claim under the ("APA") are: 1) whether the issues are purely legal ;2) whether the issues are based on a final agency action ;3) whether the controversy has a direct and immediate impact on the plaintiff ;4) whether the litigation will expedite, rather than delay or impede effective enforcement by the agency. Tex. Office of Pub. Util. Counsel v. FCC, 183 F.3d 393, 410 (5th Cir. 1999). Moreover, an agency action must: 1) mark the consummation of the agency's decision-making process, it must not be of a merely tentative or interlocutory nature.2) be one by which rights or obligations have been determined, or from which legal consequences will flow. Bennett v. Spear, 520 U.S. 154, 177-78, 117 S. Ct. 1154, 137 L. Ed.2d 281 (1997) (internal quotation and citation omitted).There is a narrow exception, However, that allows a court to enforce a non-final agency action when that action is excess of delegated powers. Leedom v. Kyne, 358 U.S. 184, 79 S. Ct. 180, 3 L. Ed.2d 210 (1958).A claim that an agency action is in plain contravention of a statutory mandate ...may present one of the extraordinary exceptions to the finality requirement. Veldhoen v. United States Coast Guard, 35 F.3d 222, 225 (5th Cir.1994).Courts only apply this exception in very narrow situation[s], when there is a plain violation of an ambiguous and mandatory provision of the statute. Am. Airlines, Inc. v. Herman, 176 F.3d 283, 293 (5th Cir.1999), only the egregious error

melds the agency's decision into justifiability, or lesser malignancies thwart the jurisdiction of the courts when review under this exception is granted, it is because the agency's challenged action is so contrary to the terms of the relevant statute that it necessities judicial review independent of the review provisions of the relevant statute:Kirby Corp. v. Pena, 109 F.3d 258, 270 (5th Cir.1997).It was held that the ("USCIS") was engaged in the unlawful practice of law when, acting with the authority of abusing their discretion, or engaged in the allegedly unlawful naturalization proceeding in violation of 8 U.S.C.A. §1422,and the ("APA").Thus, waives sovereign immunity to the extended that declaratory judgment, or other equitable relief may be available that plaintiff harm by the agency action. Ctr. For Energy & Econ. Dev. V. EPA, 398 F.3d 653, 655 (D.C.Cir.2005) ; 5 U.S.C.A. §702;

## B. ISSUANCE OF THE MANDAMUS STANDARD

The Federal Mandamus act, 28 U.S.C.A. § 1361,et seq. Provides that district court shall have original jurisdiction of any action in the nature of Mandamus to compel an officer, or employee of the United states, or any other agency thereof to perform a duty owed to the plaintiff. In the seven circuits, the following three elements must be met in order to issue a writ of mandamus: 1) a clear right in the plaintiff to the relief sought; 2) a plainly defined and employment duty on the parts of the respondents to do the act in question; 3) no other adequate remedy available. Burnett v. Bowen, 830 F.2d 731 (7th Cir.1987).The supreme court has placed particular emphasis on the third requirement, holding that the common-law writ of mandamus, as codified in 28 U.S.C.A. § 1361 is intended to provide a remedy for the plaintiff, only if he has exhausted all other avenues of relief. Heckler v. Ringer, 466 U.S. 602, 617, 104 S. Ct. 2013, 80 L. Ed.2d 622 (1984); and all writs act provides Federal courts, may issue all writs necessary, or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of laws. 28 U.S.C.A. § 1651 (a), as a general matter, this court is authorized to issue a writ of mandamus pertain to all writ act because it is "the drastic remedy"traditionally used to confine a lower courts to the lawful exercise of it jurisdiction or to compel it to exercise it authority when it has a duty to do so. United States v. Lapi, 458 F.3d 555, 561 (7th Cir.2006) ("only exceptional circumstances amounting to a judicial

unsurpation of power, will justify the invocation of this extraordinary remedy"); Talano, 273 F.3d at 762.

## C. THE FEDERAL TORT CLAIMS ACT (FTCA)

The United States" is immune from the suit absent an express waiver of its sovereign immunity. Kugel v. United States, 947 F.2d 1504, 1507 (D.C.Cir.1991).The ("FTCA")is such a waiver, authorizing claims for damages against the United States in response to certain tortuous action of government employees, but only "under circumstances where the United States", if a private person, would be liable to the claimant in accordance with the law of the place where the act, or omission occurred. 28 U.S.C.A. §§ 1346 (b) (1). To state an actionable ("FTCA") claim over this court, which has subject matter jurisdiction,plaintiff must establish a claim that is :1) against the United states; 2) for money damages 3) for injuries or loss of property, or personal injury, or death;4) caused by the negligent or wrongful act or omission of any employee of the Federal government of the United states; 5) while acting with the scope of his employment; 6) under would be liable to the plaintiff in accordance with the law of the place where the act or omission. Galvin v. Occupational Safety & Health Admin., 860 F.2d 181, 183 (5th Cir.1988).In such case, the plaintiff is recognizable under the Federal Tort claim Act ("FTCA"), 28 U.S.C.A. § 2671.et seq, and to bring and ("FTCA") claim he must first exhaust his administrative remedies. 28 U.S.C.A. § 2675; Suarez v. United States, 22 F.3d 1064, 1065 (11th Cir.1994) (citing 28 U.S.C. § 2675(a));

## D. ISSUANCE OF THE CIVIL RIGHT ACT

In order to maintain a claim under 42 U.S.C.A. § 1983,plaintiff must alleged : 1) that the challenged conduct was committed by a person acting under color of the state law, and 2) that such conduct deprived, the plaintiff of rights, privileges, or immunities secured by the constitution or laws of the United states. Cunningham v. Southlake Ctr. For Mental Health, Inc., 924 F.2d 106, 107 (7th Cir.1991) (quoting Pitchell v. Callan, 13 F.3d 545, 548 (2d Cir.1994).Section 1983 claim does not create any independent substantive right, but rather is a vehicle to "redress" ...the deprivation of Federal rights established elsewhere. Thomas v. Roach, 165 F.3d 137, 143 (2d Cir.1999).The action contains specific allegations of facts that indicate a deprivation of constitutional

rights, allegations which are not broad, and conclusive statements are insufficient to state a claim under § 1983.Travelers Insurance Co. v. Riggs,671 F.2d 810,816 (4th Cir.1982); Acevedo-Perez,768 F.3d 51, 56 (1st Cir.).

## IV. JURISDICTION AND VENUE

Indeed, the Declaratory Judgment Act ("DJA") is an enabling Act, which confers a discretion on courts rather than an absolute right upon the plaintiff. Wilton, 515 U.S. at 287, therefore, the district court shall have original jurisdiction of all civil actions arising under the constitution, laws, or treaties of the united states.28 U.S.C. § 2201(a), and the court has supplemental jurisdiction over plaintiff state law claims pursuant to 28 U.S.C. § 1367 (a).In any civil action of which the district courts have original, the district court shall have supplemental jurisdiction over all action within such original jurisdiction that they form part of the same case or controversy under Article III of the unites states constitutions. Phoenix v. Republic Angola, 216 F.3d 36, 40 (D.C.Cir.2000); Rendell v. Rumsfeld, 484 F.3d 236, 240-41 (3d Cir.2007); Brillhart v. Excess Ins. Co. of Amer., 316 U.S. 491,

### A. EXHAUSTING OF ADMINISTRATIVE REMEDIES

The exhaustion remedy contained in the Prison Reform Litigation Act ("PLRA") mandates "proper exhaustion," which means compliance with prison procedural rules and deadlines. 42 U.S.C. § 1997e (a), the plaintiff is required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. Yousef v. Reno, 254 F.3d 1214, 1216 n. 1 (10th Cir.2001).The BOP administrative procedures afforded the plaintiff all opportunities to seek formal resolution of complaints regarding any aspect of his confinement. PS 1330.18 ; 28 C.F.R. § 542.10 (a).Plaintiff must exhaust the procedures before seeking relief from court under the civil right act.42 U.S.C.A. § 1983; Ray v. Kertes, 285 F.3d 287, 295 (3d Cir.2002); and The exhaustion provision of the PLRA reads:

> **No action shall be brought with respect to prison conditions under [42 U.S.C. §] 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.**

The Failure to exhaust is an affirmative defense the respondent must plead and prove; it is not a pleading

requirement for the plaintiff. Jones, 549 U.S. At 220-24; Dillon v. Rogers, 596 F.3d 260, 272 (5th Cir.2010).

## 1. REQUEST FOR HEARING PROCEEDING

On august 3, 2007 the plaintiffs filed the N-400 Applications for Naturalization that is at issue in this declaratory judgment, then on January 5, 2017, then filed an N-336 Request for Hearing on the denial of his naturalization application. 8 U.S.C. § 1447(a).

## 2. REQUEST FOR ADMINISTRATION APPEALS FOR RECONSIDERATION

On March 8, 2017, plaintiff filed a Form I290B was clearly marked as a motion to reopen or reconsider. ("USCIS") is required to issue a written decision on the motion pursuant to its regulations. 8 C.F.R. § 103.5 (a) (7), In reviewing agency action, the ("APA") requires that due account shall be taken of the rule of prejudicial error. (quoting 5 U.S.C. § 706). The USCIS had a duty to treat the Form I-290B as a motion to reopen and render decision on it accordingly, plaintiff ask that the Court compel such agency action under the Mandamus Act, 28 U.S.C. § 1361, and the ("APA"), 5 U.S.C. § 706 (1). In re Stewart, 641 F.3d 1271, 1275 (11th Cir.2011) ("holding the Executive Branch has absolute discretion to decide whether to conduct an investigation or prosecute a case"). Powell v. Katzenbach, 359 F.2d 234, 234-35 (D.C.Cir.1965); Mattern v. Weinberger, 377 F. Supp. 906, 914.

## V. BACKGROUND AND PROCEDURES

On June 13, 2001 plaintiff was arrested by the Miami-Dade Police department on charges of driving while license suspended as "Habitual Traffic Offender" which he was place in probation for a period of one year with early termination upon completed of conditions and waive cost of supervision as soon perform one hundredth (100) hours of community services, and also was completed on, or about December 11, 2001.(Case #F01-18618);and on January 20, 2003 with (case# F03-001877), he was sentenced to credit for time served to two (2) days wit, include cost, and the records reflects that in both charges he was found guilty adjudication was withheld, and fine four hundredth seventy-one ($ 471.00) in the first case and four hundredth sixty-one($ 461.00)

in the second. August 3,2007 plaintiff filed an application for naturalization under § 316 (a) of the immigration and naturalization act (INA).On December 9, 2008 he was interviewed by the officer of the ("USCIS") to determine his eligibility for naturalization to which or any other provision of the act, the officer is hereby denied the application based on the factor that he failed to establish that he met all requirements for naturalization, in particular, the matter of good moral character pursuant to the Immigration and Nationality Act ("INA").

**a)** On December 9, 2008 plaintiff went to take the "Oath of Allegiance"administrated by officer J. Tamar Velasques, who is an employee at the ("USCIS") to which he sworn (affirm) and certify under penalty of perjury under the laws of the united state of America that he knew that the content of the application subscribes by the plaintiff, and all the evidence submitted by the plaintiff are true to the best of his knowledge and belief.

**b)** On September 14,2009 plaintiff received a form N-335 (citizen return receipt requested);it stated that his application was ineligible for the above reasons explained, which also a violation of 6 U.S.C.A. §555 (b), signed by Katherine Patterson, who is the field officer Director At ("USCIS"), Oakland Park, Florida.

**c)** On October 22,2010 Plaintiff sought legal assistance for responding to his denial by the Officer, and spoke with MR.Nishan.C Mahendran P.A and counselor at Law to advise him appropriately to concern his next step for the procedures to which he did quote that if we go to the normal procedures I might get deported, such quotation in violation of 8 U.S.C.A. § 1447 (b), and

**d)** On November 1, 2010 consistent with the legal advise by the Attorney, a later decision at his authorities', and he had filed a second application on whose behalf with a form G-28 had been filed providing notice to the attorney of record in accordance with 8 C.F.R. § 103.3.

**e)** On September 30, 2011 was convicted and sentenced in the united states on charges arising out of a single scheme of criminal conduct after the fact that he had filed his application for naturalization in violation of 18 U.S.C.A. § 1349.Thereafter, remanded to the custody of the ("BOP"), upon admittance, the Bop's designation and sentencing computation center ("DSCC") designated him to "IHP release site", or to exposed him to the various of

danger theory by the private operation, also he executes his sentence in a much harsher manner compared to his peers, housed offenders duly convicted and sentenced by a court established by the act of congress the ("BOP") a panel agency of the federal government of the united states exceeds its authorities and abuses its discretion by regulating or engaging in punishing or having the required delegated authority to function in that capacity in complete disregard of the act. 18 U.S.C.A. § 3621 (b).

**f)** On October 3, 2013 in regard to the new application, he received a notice administratively closed, which plaintiff appealed the administration closed pursuant to 8 C.F.R. § 335.6 (b), requested to reopen the application before the due date, December 23, 2013 and it was signed by Brett H. Lassen as the Field Director officer.

**g)** On April 2,2014 plaintiff filed a complaint to the Regional Director of the ("BOP") pursuant to § 28 C.F.R. § 542.10,542.11(a) (3) concerning his allegation of being a "U.S national"consistent with § 1101 (a) (3) and 8 U.S.C.A. § 1101 (a) (22) (B) which was denied by Mrs, Donna Mellendick, Administrative Private Management Branch ("PMB").

**h)** On may 6,2014 plaintiff filed a request of declaration under § 1503 (a) to the secretary of States Mr. John Kerry, claiming that or demanding for his certification of a "national status"under the applicable procedure maintain for those who meet the criteria as a U.S national pursuant to 8 U.S.C.A. § 1452 (b), and Mr Kerry was replaced by Mr. Rex Tillerson as Secretary of state at this current time.

**i)** On July 21, 2015 plaintiff filed a national Inmate appeals of the ("BOP") consistent with the procedures, which was also denied by Mr. Ian Conner, Administration National Inmates Appeals.

**j)** All the time relevant to the events this action Mr. Jeh Charles Johnson, who was the Secretary of the homeland Security ("DHS") and was replaced by Mr. John Kelly as the current secretary of of Homeland Security.

**k)** All the time relevant to the events this action Mr. Charles E Samuel, who is the Director of the ("BOP"), and continue to be at this current time.

**l)** All the time relevant to the events this action Mrs. Loretta lynch, and Mr. Eric Holder, who was the

Attorneys General of the united states ("AG") and was replaced by Mr. Jeff sessions, as the current Attorney General of the United states of America.

## V. DISCUSION OF ISSUES AND CITATION AUTHORITIES

Plaintiff invokes the liberal construance dictated by the Supreme court in Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed.2d 652 (1972);Yohey v. Collins, 985 F.2d 222, 224-25 (5th Cir.1993) as a "**Pro-SE**" litigant without the benefit of formal training as a lawyer or help of a professional lawyer in drafting his pleading. Matzker v. Herr, 748 F.2d 1142, 1146 (7th Cir.1984); Caruth v. Pinkney, 683 F.2d 1044, 1050 (7th Cir.1982). This court should recognize that federal courts have historically exercised great tolerance to ensure that an impartial forum remains available to plaintiffs invoking the jurisdiction of the court without the guidance of trained counsel. Pro se motions and complaints such as the plaintiffs' are held to less stringent pleading requirements; rigor in the examination of such motions, complaints and pleadings is inappropriate. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir.1998); Mount v. Book-of-the-Month Club, Inc., 555 F.2d 1108, 1112 (2d Cir.1977).

## VI. MAIN DUTY OF THE IMMIGRATION OFFICER REGULAR OCCUPATION

The relevant statute, 5 U.S.C.A. § 2105, defines a federal employees as an individual who is :1) appointed to the civil service by designated federal officer acting in his official capacity as such ;2) engaged in the performance of a federal function under authority of an act of congress or execute order ; and 3) subject to the supervision of a federal officer during the performance of his duty, if it arises out of and the course of his employment. Tarver v. United States, 25 F.3d 900, 902 (10th Cir.1994).As such exercise discretion, and are generally immune from suit where the act at issue required personnel deliberation, decision and judgment, rather than obedience to order, or the Performance of duty in which a federal employee is left no choice of his own. Davis v. City of Las Vegas, 478 F.3d 1048, 1053 (9th Cir.2007).Here, plaintiff met the first prong of the test because the officer decision of inadequate investigation, the manner in which the denial was taken in place in violation of the statutory requirements, as well as his decision on how the proceed in the investigation and the

subsequent of an abuse of discretion required personal deliberate and judgment, however, legal judgment is not personal judgment, the exercise of such judgment must reflect and remain faithful to the underlying purposes of the clauses, and it must take account of context and consequences measure in light of those purposes at any rate, if anything is clear in establishing clause jurisprudence, it is this establishment clause questions are heavily dependent on the specific context and content of the display. Van Orden, 125 S. Ct. at 2869 (Breyer ;J., concurring in the judgment).The inquiry is necessary, fact intensive., id.2869, and because the statutory language and the decision run counter to congress intent in giving priority to which in naturalization proceedings, and the burden of establishing that the officer was not acting within his discretion authority with the execution of such denial.8 C.F.R. § 316.10 (c) ;In re McNeil, D.C., 14 F. Supp. 394.In such case, stand for the proposition that probation is a factor to be considered in making the good moral character determination, not an additional hurdle to overcome once the good moral character finding has made. Petition of wills. 100 F. Supp. 337 (E.D.Va.1951).("if congress has explicitly left the a gap for the ("USCIS") to fill, there is and express delegation of authorities to the agency or its employees to elucidate a specific provision of the statute by regulation") further, this determination is supported by case law. United States v. Jean-Baptiste, 395 F.3d at 1194 (11th Cir.2005) ; 8 C.F.R. § 316.10 (c) (1) ; which is represents a reasonable interpretation of the statute requirement of good moral character, and it is not "ultra vires".Finally, plaintiff establishes that, the officer conduct in this case so obviously violated the equal protection clause that prior case law is unnecessary to show the law was clearly established, in some rare cases ...a violation may be so egregious that the constitution or a statute on its face may be to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of the case law, here, the equal protection clause alone is sufficient to put the officer or the agency on notice that their acts were unconstitutional, and a broad principal in case law is sufficient to establish clearly the law applicable to a specific set of facts facing a government official, when it does so with obvious clarity to the point that every objectively reasonable with that in mind, turn the attention to the facts of the case and its elementary that a

negligence claim under the Florida law requires the coalescence of the following elements: A legal duty owed to the plaintiff, and a breach of that duty, which proximately causes him damages. Patterson v. Deed, 472 So.2d . 1210,1214 (Fla.1st DCA.1985); DePinto v. Provident Security Life Ins. Co., 323 F.2d 826, 837 (9th Cir.1963).

## A. BREACH OF DUTY BY THE OFFICER

While the officer may make legal decision within a wide range of reasonableness in serving the interest of the unit he represents, such decision may not be made solely for the benefits of personal animus, more politically against a minority as an essential element, then necessary to raise a limitation upon the officer discretion in bargain with respect to plaintiff rights in bad faith motive, and in intent to hostile classification against a portion of naturalization applicant's. Riccobono v. Whitpain Township, 497 F. Supp. 1364 (E.D.Pa.1980). Nevertheless, to state a breach of duty claim against the officer, plaintiff must plausible allege that the officer wrongful conduct caused him injury, in other words, he must demonstrated that he actually suffered injury as a result of the officer willful and malicious conduct applies only when the officer knows or has reason to know he or she is doing something illegal:he must have reason know that the challenged conduct is prohibited. McLaughlin v. Richland Shoe Co., 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed.2d 115 (1988).The exception does not impose liability merely because of the officer intentionally commits an act, that a court or a jury subsequently determines is wrong, indeed the exception anticipate liability only when the officer intentionally commits the act that he then has reason to believe is prohibited. Rico, 472 N.W 2d. At 107 (emphasis omitted).Willful and malicious are considered synonymous in this context, and whether or not the officer acted maliciously or willfully is usually a question of fact to be resolved by a jury. Johnson, 453 N.W 2d at 42.However, to establish that the officer conduct is malicious or willful, plaintiff must present specific facts that the officer intentionally committed wrongful acts without legal justification or willfully violation a known right. Rico v. Minnesota,472 N.W 2d.100,107 (Minn.1991).When viewed in the light most favorable to plaintiff in this case, the evidence is wholly support that a finding of egregious. Callahan, 555 U.S. 223.Therefore, the court has the discretion to address the two prongs of the analysis

in either order. Id.236. For the purpose of this inquiry, a right is clearly establishes:1) case law with indistinguishable facts clearly establish the constitutional rights ;2) A broad statement of principal within the constitution, or case law clearly establishes a constitutional right;or 3) the conduct was so egregious that a constitutional right was clearly violated, even in the total absence of case law. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir.2013), and it is clear and settled that the agency, and the officer are not entitled to raise any qualify immunity in this case as defense for their intentional act, as they facing the circumstances that they should have known their conducts in this case violated federal law when they acted. Here, the findings principal against discrimination based on classification did put them on notice that their act or omission constituted an intentional act, thus government official facing the circumstances would know that the officer in this case violated federal law when he acted in such misconduct, further, the findings principal against discrimination based on classification did put the official on notice that their acts, or omissions in this case constituted and international act. Reeves., 530 U.S. At 147,on the other hand, it has been defined as follow: if the officer has the intelligence enough to understand the physical nature and consequences of his act, and ...consciously directs his action so that the injury of the plaintiff is the natural or probable consequences, thereof, then that injury is the result of that intentional act. Sutherland v. Roth,407 so .2d 139,140 (Ala.civ app.1981);Mazo v. United States, 591 F.2d 1151, 1157 (5th Cir.).

## B. ESTABLISH PROXIMATE CAUSE

This leaves the question of causation, to establish proximate cause, as plaintiff must present evidence from which a reasonable jury could find that there was a direct and substantial causal relationship between the officer breach of the standard of care to his injuries, and that his injuries where foreseeable, and There may be a number of factual causes of any particular injury; not everyone whose acts are factual causes of an injury is legally responsible. Hernandez v. Travelers Ins. Co., 489 F.2d 721, 724 (5th Cir. 1974).The law determines whether it is fair to hold someone responsible for an injury using the concept of proximate cause, in such, the act by the officer is the proximate cause of the injuries, if the injury is a reasonably foreseeable consequence of the act. Sheehan v.

N. Am. Mktg. Corp., 610 F.3d 144, 150 (1st Cir.2010) ("explaining that proximate cause "need not be the sole and only cause"). Indeed, as he will explain to the jury, it is often the case that "many factors or things may operate at the same time, either independently or together, to cause injury" and "in such a case, either can be the cause."Sosa, 542 U.S. At 704. A government policy or custom can be established in two ways. Policy is made when a decision-maker possessing final authority to establish naturalization proceedings with respect to the issue, while an official denial of plaintiff's naturalization application. Indeed, though not authorized by law, such practices of ("USCIS") officials are so permanently and well-settled as to virtually constitute law. McTernan v. City of York, Pennsylvania, 564 F.3d 636, 658 (3d Cir.2009) (citations, internal quotation marks, and brackets omitted). Custom requires proof of knowledge and acquiescence by the decision-maker. Furthermore, plaintiff bears the additional burden of proving that the ("USCIS") practice was the proximate cause of the injuries suffered. Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990). To do so, he must demonstrate a plausible nexus' or 'affirmative link' between the agency custom and the specific deprivation of constitutional rights at issue. McTigue v. City of Chicago, 60 F.3d 381, 382 (7th Cir.1995).As one can imagine, the failure to train, supervise, or investigate contexts, the casual link must connect the deficient training, supervisory or investigatory programs and the constitutional injury. In such, The issue of proximate causation is often reserved for the jury "[a]s long as the casual link is not too tenuous."Bielevicz, 915 F.2d at 851.In the present matter, Plaintiff does point to an explicit or affirmative policy. Indeed, he alleges that ("USCIS") failed to properly train its officers how to exercise its discretionary powers under the ("INA"), Because the statute does confer on ... the ("USCIS") which of the applicant's they have broad discretionary authority with respect to eligibility for naturalization, and the interpretation of the statute. 8 C.F.R. § 316.10 (c); United States v. Ginsberg, 270 U.S. 568, 46 S. Ct. 425, 70; Fitzpatrick v. Snyder, 220 F.2d 522 (1 Cir.,

## C. INADEQUATE INVESTIGATION

The procedural rules of issues are §§ 8 C.F.R.335.1;316.10 (c). According to the procedures the prerequisites for denied plaintiff application are :1) outlining the process for investigating his application and

examining it; 2) was promulgated in accordance with established rule making procedures. The (INA) sets forth ("USCIS" responsibilities with respect to adjudication on naturalization applicant's.8 C.F.R. § 335.1 and it provides that before a person of naturalized, ("USCIS") , Shall conduct a personnel investigation of the plaintiff. 8 C.F.R. § 335.1(a). Therefore, accompanying with the regulations provide that the investigation shall consist at the minimum of a review of all pertinent record, police department checks, and neighborhood investigation in the vicinities where plaintiff has resided and has been employed, or engaged in business, for the at least the five years immediately proceeding the filling of his application, in the extreme case, plaintiff presenting this reconsideration, and it would be unreasonable and perhaps even deliberately indifference for the officer, ("USCIS"), or even the ("DHS") choose not to investigate his personnel background where he could have presented his inexperience, lack of foundation, reformation of his character, and his extenuating circumstances. Thompson,390 U.S at 727. Accordingly, negligence, lack of investigation, or failure to act as a reasonable prudent person are insufficient to show actual malice. However, the inadequate investigation in this case coupled with the presence of ulterior motives may be sufficient to raised a fact issue as to actual malice. Hoffman v. Washington Post Co., 433 F. Supp. 600, 605 (D.D.C.1977).As understand of the ("USCIS") action requirement must begin with ("APA") definition of that terms as the issuance of a rule, order, license, sanction, or relief or the equivalent or denial thereof, or failure to act under the act. 5 U.S.C.A. §551 (13).Meanwhile, The supreme court in Suwa elucidated the definition of the ("USCIS") action for the purpose of a §706 (1), as to the plaintiff prevail in that claim, he must proffers what favorable to the evidence that would have produced. United States v. Dimas, 3 F.3d 1015, 1017 (7th Cir.1993).In particular the matter of his lack of foundation, and personnel knowledge, assuming, aguendo, this allegation is true:

> **It is well established that those lacking proper parental care by reason of the fault, or habit of their parents, guardian, or custodian;-those lacking proper or necessary subsistence, education, or other care necessary for their health, moral or well -being because of the neglect or refusal to provide such as care, or neglect or refusal to provide special care required for condition, or behavior ;and ...those in a situation or engaging in an occupation dangerous to life or limbo or injurious to their health or moral.**

Such statement appears to be the most compelling to plaintiff situation, or his behavior because he never had a father or a mother that would guided him to understand the importance of his driving record, and that should have been considered by the officer or he would have taken into account as the standard of the American citizen in the community. United States v. Peña, 586 F.3d 105, 110-11 (1st Cir.2009).In such, that could be the evidence to the officer as relevant that he has not any tendency to make the existence of any fact that is consequence to determine of the action more probable or less probable than it would be without the evidence. Quick v. Donaldson, 90 F.3d 1372, 1376-77 (8th Cir.1996).Also the relevance standard is also interpreted liberally. Daubert, 509 U.S. at 591-92.Thus, to the conclusive statement made by the officer "you have not established Extenuating circumstances" that is to say a strong statement without provided an opportunity to do so. Codd v. Vegler, 429 U.S. 624, 627, 97 S. Ct. 882, 883, 51 L. Ed.2d 92 (1977).Further, any statement made by the officer should have been considered allegedly false allegation against the plaintiff because if he would conduct and adequate investigation, he would have known that the lack of his foundation could have caused his behavior. Florida v. J.L., 529 U.S. At 270 ; O'Tuel v. Osborne, 706 F.2d 498 (4th Cir.1983); Fowler v. Parratt, 682 F.2d 746 (8th Cir.1982).

## VII. MAIN DUTY OF THE ATTORNEY REPRESENTATIVE

Although the assessment of attorney representation is to be based on an objective standard, ultimately, the decision is left to the "good sense and discretion" of the reviewing court. McMann v. Richardson, 397 U.S. at 771. Thus, any conclusion will be influenced significantly by the subjective reactions and personal judgment of the reviewing judge or panel. Denton v. Ricketts, 791 F.2d 824, 827 (10th Cir.1986). Though prevailing norms of practice as embodied in bar association standards are helpful, whether the particular attorney's conduct falls within the boundaries of "reasonable professional assistance" will depend upon the particular facts and circumstances of this case, further for counsel's unprofessional errors, the result of the proceeding would have been different. Bates v. Blackburn, 805 F.2d 569, 577-78 (5th Cir.1986); Kleeberg v. Sipser, 265 N.Y. 87, 191 N.E. 845 (1934).

**a)** He should have filed Form I-290B, Notice of Appeal or Motion, which the ("DHS") construed as a

motion for reconsideration. On December 10, 2009, the ("DHS") upheld its initial decision, using the occasion to expand its statement of reasons. 8 C.F.R. § 103.5 (a) (7).

**b)** The failure by the attorney not request a hearing within a stated time. Variant approaches can be imagined. But the approach followed was plainly inadequate. Whether denominated "administrative" or "judicial," the court's procedure erroneously conveyed a message that the matter was closed that nothing more in the way of process was available. 8 U.S.C.A. §1447 (b)

**c)** It is settled that The statutory test of eligibility to citizenship is not whether plaintiff will make a good citizen, but the considerably more specific test of allegiance. Immigration and Nationality Act, § 316 (a) (e), 8 U.S.C.A. § 1427 (a) (e).The attorney false representation amounted to a suppression of evidence by case law, and cause plaintiff injury for the sole purpose of his own conflict of interest.

## A. INSTITUTED A LEGAL MALPRACTICE

Given the varying contexts in which the existence of an attorney-client relationship is relevant, including issues of privileged communications, disqualification in the face of conflicts of interest and legal malpractice actions, it is clear that the requirements for establishing such a relationship will vary. Westinghouse Electric Corp. v. Kerr-McGee Corp., 580 F.2d 1311 (7th Cir.).In the context of the attorney-client privilege, it is the act of directly rendering legal advice, services, or assistance that forms the touchstone of the attorney-client relationship, However, there are certain general factors that characterize the existence of an attorney-client relationship. Thus, an attorney's refused to appear in a judicial or quasi-judicial proceeding creates a presumption that the attorney-client relationship does not exist. Westinghouse Electric Corp. v. Kerr-McGee Corp., 580 F.2d 1311 (7th Cir.).

## B. BREACH OF FIDUCIARY DUTY

The Attorney owed an uncompromising duty, as fiduciaries, to protect the interests of the plaintiff, provide him appropriate advice and to exercise the same degree of care that an ordinary prudent man would exercise in his own behalf to ensure that the process of his naturalization application. Zhen Nan Lin v. U.S. Dep't of Justice, 459

F.3d 255, 262 (2d Cir.2006) 'But to say that a man is a fiduciary only begins analysis; it gives direction to further inquiry. To whom is he a fiduciary? What obligation does he owe as a fiduciary? In what respect has he failed to discharge these obligations? And what are the consequences of his deviation from duty?' Consequently, it is accurate to say that the Attorney breach his duty under this circumstance where plaintiff conviction is not deportable. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75. Such, a case the action or decision by the Attorney with a personal interest is necessary to effect or influence the action of the denial. Jary Leasing Corp. v. United States, supra, 254 F. Supp. at 159. The risk involved is that the Attorney's personal interest may override his fiduciary obligation so that his misconduct does bear the injury, and causation. In re ORFA Sec. Litig., 654 F. Supp. 1449, 1457 (D.N.J.1987).Moreover, If any person, liable to an action by another, shall fraudulently, by actual misrepresentation, conceal from him or her the existence of the cause of action, said cause of action shall be deemed to accrue against the person so liable therefor at the time when the person entitled to sue thereon shall first discover its existence. Yale Auto Parts, Inc. v. Johnson, 593 F. Supp. 329, 334 (D. Conn.1984);Carey,706 F.2d 377.

## VIII. BURDEN OF PROVE AS A NATURALIZE CITIZEN

It is correct that the plaintiff has the burden to prove that it has a substantial interest in the procedure of his application. Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 472-73 (9th Cir.1992). It must prove that the harm it is trying to prevent is real and that a serious problem does in fact exist, and Plaintiff claims that he met all the requirement under the law as a naturalize citizen. Shomberg v. United States, 348 U.S. 540, 544, 75 S. Ct. 509, 99 L. Ed. 624 (1955) It is the plaintiff's burden to prove that ("USCIS") has purposefully availed itself of the forum statute. Burke v. Quartey, 969 F. Supp. 921, 924 (D.N.J.1997). 8 C.F.R. § 316.10 (a) (1).The plaintiff bears the burden of demonstrating the absence of all genuine issues of material fact. Gregg v. Allen-Bradley Co., 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the plaintiff is not as formidable as some decisions have indicated, and he need not produce evidence showing the absence of a genuine issue of material fact; rather, the burden by showing'--that is, pointing out to the district court--that there is an absence when the officer denied his application,

and the burden shifts to the ("USCIS"). May v. Gardner, 362 F.2d 616 (6th Cir. 1966); Vinyard v. Wilson, 311 F.3d 1340, 1347 (11th Cir.2002); Baker Mfg. Co. v. Whitewater Mfg. Co., 430 F.2d 1008, 1011 (7th Cir.1970).

## A. EXTENUATING CIRCUMSTANCES TO MITIGATE CONDUCTS

In this case, however, we must conclude that there are several extenuating circumstances, which, when taken together, partially excuse the lack of his foundation, inexperience, and lack of maturity that could have caused his conducts, and lack of judgment that defaulted him for his difficulties that challenging his personality even today he still confronts, moreover, problems would be particularly likely for those who, one account of the plaintiff's situation of being inexperience, age, indigence, and the like would have committed an unlawful acts without the comfort of parental role. Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S. Ct. 571, 69 L. Ed. 1070 (1925).The supreme court, stated that three reasons justify the conclusion that the constitutional right of children cannot be equated to with those adults:the peculiar vulnerability of children;inability to make critical decision in an informed, nature manner, and the importance of the parental role in a child rearing. Bellotti, 443 U.S. At 638-39. If properly understand then, the tradition of parental authority is not inconsistent the tradition of individual liberty rather, the former is one of the basis presupposition of the latter, and legal restriction on minors, especially those supportive of the parental role, may be important to the child's changes for the full growth and maturity that make eventual participation in a free society meaningful and rewarding. Id.638-39 (Op.of Powell, J.) (internal citation omitted).In such case, the Florida department of Highway safety and motor vehicle ("DVM") before issued a driver license to an immature child they are required the guidance of the child's parental role, assuming the plaintiff had such as opportunity, maybe in the first instance of his convictions that would had never happened. Whalen, 429 U.S. At 589. As such, it appears that the plaintiff addresses his reason for committed the unlawful acts and the extenuating circumstances which might excuse him from the failure of establishing it, and there is no way that the officer could have shown that his unlawful conducts has been willfully and intentionally, and that is the evidence of his extenuating circumstances for his conduct before he had committed those acts. United States v.

Suarez, 664 F.3d 655, 658 (7th Cir.2011).Thus, plaintiff demonstrating by supporting evidence of his culpability of his underlying offenses, is sufficient to establish extenuating circumstances that mitigate the effect of his unlawful acts on his moral character. Abusamhadaneh v Taylor, 873 F. Supp.2d 682, (E.D.Va. 2012), meanwhile, the Okeke court, refused to find extenuating circumstances where he asserted that the underlying offense was his first and the only criminal conviction, he played a minor role in the offense, and he received no compensation for his role, which is contrary to this case in question. Okeke 671 F. Supp.2d 744,751 (D.MD.2009).Although the remainder of plaintiff criminal history, another occurred prior to the beginning of the five-years statutory period cannot alone serve as the basis for finding that his presently lacking of good moral character, his history may be considered to the extent that it reflects his current moral character, or to show that there has not been an establishment in his character since that time. Tieri v. Immigration and Naturalization Service, 457 F. 2d 391 (2d Cir. 1972).Here, as explained plaintiff pleaded guilty during the statutory period to Driving while license suspended ("DWLS"), However, this was only the latest in a series of his Driving while license suspended, another one occurred of the course of seven years prior to the statutory period. 8 C.F.R. § 316.10 (b), Here as relevant plaintiff bears the burden of establishing by a preponderance of the evidence that he met all of the requirement of naturalization.8 C.F.R. § 316.10 (a) (1); INS v. Pangilinan, 486 U.S. 875, 108 S. Ct. 2210, 100 L. Ed.2d 882 (1988). While, it is not explicitly defined in the regulations, or relevant case laws, and plaintiff extenuating circumstances pertain to his culpability for the unlawful acts he had committed, and not to any consequences therefrom. United States v. Jean-Baptiste, 395 F.3d 1190, 1191 (11th Cir.2005).Here, it is undisputed that plaintiff committed and unlawful acts, However, he has not failed to establish the reformation of his character, more specifically, his conducts and acts prior to the statutory period maybe considered for the purposes of the moral character determination, if the conduct during the statutory period does reflect that he has been reform of character from an earlier period, or if the earlier conduct and acts appears relevant to a determination of his present moral character.8 C.F.R. § 316.10 (a) (2).For instance, In Marcantonio, the fourth circuit recognized that inquiry into his moral character is not limited to the statutory period, and this evidence of prior offense maybe considered with other evidence as basis for finding that

he has failed to establish good moral character, moreover, the court also noted that "district court should not rely only conduct outside the years period as the sole basis for denying naturalization". Marcantonio,185 F.2d 934 (4 Cir. 1950), as plaintiff in this case, relying on similar basis, and the court in Tan found that the INS' denial of Tan petition for Naturalization was improper. Tan v. United States Dept. of Justice, Immigration and Naturalization Service, 931 F. Supp. 725, 730 (D. Haw.1996).In finding that Tan's conduct the year statutory period did not preclude him from establishing good moral character, the court reverse the INS decision that the regulations do not require him to have impeccable character throughout his entire life, and congress deliberately narrowed the ("USCIS") to focus on the proceeding, while events outside the time period maybe historically relevant to the moral character determination of these events cannot in themselves preclude a finding of good moral character, similarly to plaintiff in this case, he pursued his education, paid taxes, operating organization, support his dependents and withheld an existing marriage for years after the last conviction of his unlawful act, that character should have been considered as one of individual's of integrity, and his standing as a good family man, when considering these achievements, the officer should taken into account that he had live up to the standard for good moral character as required under the statute 8 U.S.C. §§ 1101 (f) Baugh v. United States, 27 F. (2d) 257, 261 (C. C. A. 9).

## B. ESTABLISHMENT OF GOOD MORAL CHARACTER

As Congress deliberately Narrow ("USCIS") to focus to the proceedings, in particular regulatory § 316.10 (c) (1) provides in pertinent part that :

> **Effect of the probation or parole, an applicant who has been on probation, parole, or suspended sentenced during all or part of the statutory period is not thereby preclude from establishing good moral character, but such probation, parole or suspended sentenced may be considered by the service in determining good moral character. an applicant will not be approved until after the parole, or sentence has been completed.**

And § 316.10 (c) addresses the proof of good moral character in [**"certain"**] case as the plaintiff inquiring about, and as described by the plaintiff in this case, personnel achievements is one of the Special circumstances, which in

turn by discretionary factors that might considered as his establishment of his character. U.S. v. Rebelo, 646 F. Supp. 2d 682 (D.N.J. 2009).However, that was not the only congress intent. Id (c) when enacted the law, the word ["**Certain**"] is imperative, and regardless of whether or not it eliminates discretion, it certainly deprives the ("USCIS"), ("DHS") of the right to do something that is clearly contrary to the intent of the legislature. Chaney, 470 U.S. at 833, n. 4;Adams v. Richardson, 480 F.2d 1159 (D.C.Cir.1973).Therefore, ("DHS"), ("USCIS"), does not have the discretion and ability to determine how it will effectuate its statutory duty and use its resources where they will do the most achieve the goals express by the congress, in such, being the case the proof of good Moral character express preemption clause, § 316.10 (c), states that the Act shall superseded any other subsection in conjunction with § 316.10 (2) (b) (v).Insofar, as they are now or hereafter related to whom should be exclude from the reformation of character. 8 C.F.R. § 316.2 (a) (7) and 316.10 (a) (1), (a) (2) and (b) (3) (III), among others, see as well. Egelhoff, 532 U.S. At 143.Thus, congress intent, the reformation of character required the weight of evaluating the commission of serious crimes ....is as typical a sentencing factors as one might imagine. Sell v. United States, 539 U.S. 166 (emphasis in original)("the government interest in bringing to trial an individual accused of serious crime is important").Whether a crime is serious it should be determined by the statutory penalty. United States v. Green, 532 F.3d 538, 549 (6th Cir.2008).The Six circuit has instructed that the maximum statutory period is the most objective means of determining the seriousness of a crime...because it reveals the legislature's judgment about the offense's severity. Id. In this case in question, if plaintiff was confined to a panel institution, or in probation, or parole for an aggravate of two-days [2 days] pursuant to his convictions provided that such confinement, he would not have to establish good moral character as he provided direct evidence of reformation, and rehabilitation occurred prior to the beginning of the statutory period. 8 C.F.R. §§ 316.10 (2) (b) (v); 316.10 (c) (1).Furthermore, the court in Rebelo said that "it is undisputed that he server a two-years term of probation for his aggravated assault conviction from September 8,1995 thorough July 14, 1997.That his application for naturalization was approved on October 31, 1995;and that he took the "Oath of Allegiance" on December,7, 1997.Thus, if valid, the probation regulation rendered him ineligible for naturalization during his term of

probation, rendering Naturalization illegally procured".United States v. Rebelo, 646 F. Supp.2d 682, 692 (D.N.J.2009); U.S. v. Kiang, 175 F. Supp.2d 942, 949 (E.D.Mich.2001).Thus, it is clear that Rebelo case is contrary to the one in question, because his aggravated assault conviction qualified him as an aggravated felony conviction for purposes of 8 U.S.C. § 1227 (a) (2) (A) (iii).Therefore, it is equivalent that congress left the matter of reformation of character in the control of the judicial power, whom had found plaintiff in this case guilty, adjudicated, and withheld rather than the ("USCIS"), ("DHS"), and even plaintiff's personnel achievements should not have to take into account when it involves for certain case like he is presenting in this situation herein. 8 C.F.R. §§ 316.10 (c) ;316.10 (2) (b); Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005) ("The requirement that jurisdiction be established as a threshold matter spring's from the nature and limits of the judicial power of the united states and it is inflexible and without exceptions") (alteration in original) (quoting, Mansfield C. & L. M. Ry. v. Swan, 111 U.S. 379).This general rule, However, is not absolute :The applicability of issues preclusion to federal statute claims turn on whether a common law rule of preclusion would be consistent with congress intent in enacting the statute. 8 C.F.R. §§§ 316.2 (a) (7);316.10 (a) (b) and 316.10 (c) (1); University of Tennessee v. Elliott, 478 U.S. At 799,and because of that, it is clear that congress understood to legislate against a background of common law adjudicatory principles, courts presumes that issue of preclusion applies to federal statute claims unless a statutory purpose to the contrary is evident. Id.799 ("finding that the issue of "Oath of Allegiance" is applicable to whom has the evidence of good moral of character in certain cases").Although congress need not to state precisely any intention to overcome the presumption's application to the statutory scheme. Olympic Sports Prods., Inc. v. Universal Athletic Sales Co., 760 F.2d 910, 913 (9th Cir.1985).Therefore, in order to abrogate a common-law principle, the statute must [at] speaks directly to the question address by the common law. United States v. Texas, 507 U.S. 529.As mentioned above, congress excluded any serious criminals for which the term of imprisonment is at least one-hundredth-eighty days (180), thus excluded them from the reformation of character, or which most likely, if convicted of aggregated felony, or moral turpitude at any time after admission is deportable, and With the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978,

Congress established a per se category of "particularly serious" criminals comprised of aliens convicted of aggravated felonies. Delgado v. Holder, 563 F.3d 863, 869 (9th Cir.2009).Likewise, it is clear that traffic convictions are not moral turpitude, even so... It is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. "Moral turpitude" has been defined as anything done contrary to justice, honesty, principle, or good morals, or an act of baseness, vileness, or depravity in the private and social duties which a person owes to his or her fellow citizens or to society in general regardless of whether it is punishable as a crime. Crimes involving moral turpitude shock the public conscience. Robles-Urrea v. Holder, 678 F.3d 702, 708 (9th Cir.2012).Not every offense that runs against accepted rules of social conduct will qualify as a "crime involving moral turpitude"; rather, only truly unconscionable conduct surpasses the threshold of moral turpitude. Maghsoudi v. INS, 181 F.3d 8, 14 (1st Cir.1999). Under the controlling laws, the convictions of the plaintiff in this case should not preclude him a finding that is one possesses the lack of good moral of character required for naturalization. Gomez-Lopez v. Ashcroft, 393 F.3d 882, 884 (9th Cir.2005); 8 U.S.C. § 1101 (f); 8 C.F.R. § 316.10 (a) (1), and we must look at congress intent in enacting § 316.10 (c), as it stating that in the intent of the legislation is to provide minor criminals some advantageous consistent with the constitutions of the united states. 8 C.F.R. § 316.10 (a) (7), in particular, congress was concerns with which of the minor criminals should have been granted the benefits of the reformation of character, and the benefits of the constitutions under the statute, which it decided in two parts:1) those who was confined to a panel institution for an aggregate of less than one-hundredth-eighty-days (180 days); 2) those that was confined more, which also constitute a gap for the ("USCIS"), ("DHS") to fulfill, as matter of law, that is to say, clearly deliberately indifference, gross negligence, and reckless conduct, and failure of consideration by the agencies, in additional their conducts amount to a breach of duty consistent with the following statutes: 6 U.S.C. §§§ 202; 271, 557,and 5 U.S.C. §§706 (1) (2) (A).That duty includes a statutory obligation to serve the interest of the plaintiff without hostility or discrimination toward him, or any to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conducts as presenting in the case, Yeghiazaryan v. Gonzales, 439 F.3d 994, 998 (9th Cir.2006).Although, under the arbitrary

and capricious standard of review, is a highly deferential one, which presume the agency's action to be valid. Fulani v. FCC, 49 F.3d 904, 908 (2d Cir.1995).And it is well established in our court circuits, the agency's denial is highly deferential, and we are not substituted our judgment for the agency, but must considered whether the decision was based on a consideration of the relevant factors, or whether there has been a clear error of the denial. United States v. Soulard, 730 F.2d 1292, 1296 (9th Cir.1984);[8 C.F.R. §§§§ 316.2 (a) (7);316.10 (a) (1), (a) (2);316.10 (a) (2) (b) (iii)];[8 C.F.R. §§ 316.2 (a) (7);316.10 (c) (1);316.10 (2) (b) (v)].As we can see neither one of the above combination of statutes applied to plaintiff in this case, and he should not be denied whether by discretionary, or statutory mandate. NLRB v. Cheese Barn, Inc., 558 F.2d 526, 529 (9th Cir. 1977); MCorp, 502 U.S. At 43.

## IX. IN ACCORDANCE WITH THE STATUTORY LANGUAGES

In respect of the procedures employable before the court, and the agency, a review of the statutory language reveals that its not judicial character. Backus v. Depot Co., 169 U.S. 557, 568. The action is commenced by a complaint alleging the violation of the statutes. 8 C.F.R. § 316.10 (2) (b) (v);316.10 (c) (1).Meanwhile, plaintiff intention is reminded the agency, or the court that he is "Pro-Se" Litigant, in order to clarify the precise claims being urged by naming the last criminal being a ["**transparency**"], and that is the ambiguity lies in the existence of matter unknown to congress's intent. Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 120 (2d Cir.2007), nor can we divine what congress would have wanted, if it had thought of the situation before the agency, or the court. Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir.2008).Thus, Congress sought to avoid the danger of the situation in this case, by enacted laws, when an applicant's who is, or was confined to a panel institution for two days (2 days), but less than one-hundredth-eighty-days (180 days), and then he should be exclude from § 316.2 (a) (7), while, plaintiff is demonstrating that, during, or part of the statutory prescribed period, he is, and continue to be a person of good moral of character, this include the period between the examination and the administration of the "Oath of allegiance".8 U.S.C.A. § 1448 (a) ; Perdomo-Padilla, 333 F.3d

at 972, and it is true that ("USCIS") should not given no defense at all on the question, whether the statute is ambiguous, and if the agency erroneously content that congress's intent has been clearly express, and has rested on that ground for the denial, we remand to required the agency to consider the question a flesh in light of the ambiguity we see. Cajun Elec. Power Coop., Inc. v. FERC, 924 F.2d 1132, 1136 (D.C.Cir.1991).While, congress left the gap to ("USCIS"), ("DHS"), as to exercise their discretion to resolve the ambiguities.8 C.F.R. §§ 316.2 (a) (7); 316.10 (c) (1);316.10 (2) (b) (v), as we can see, the analysis of this factor is tailored to circumstances such presenting as a ["**transparency**"] that might have endured more than a minor criminal, who, in turn might have to become one as the average citizen.8 C.F.R. §§ 316.10 (a) (1);Shweika v. Department of Homeland Security, 723 F.3d 710 (6th Cir.2013).The Sixth Circuit acknowledged that Congress may nevertheless make a clear statement even if it does not use magic words. Here, Dictionary definition of the word "allegiance" indicates that a person must have loyalty or other obligation of loyalty as to a person, nation, sovereign, or cause:these definitions' means allegiance as "inter alias" to the exclusion of the one from establish good moral character as ["**transparency**"] occurred prior to the beginning of the statute period.8 C.F.R. §§ 316.10 (a) (2);Crespo v. Holder, 631 F.3d 130, 133 (4th Cir.2011).Therefore, it is within the boundary of the interpretation the plain language of the statute, court's give the terms, their ordinary, contemporary, [and] common meaning, and indication of congress intended them to bear some different import. Webster's II New College Dictionary (2d ed. 2001).The one in question manifest's congress intent to protect the constitution of the united states, and create exceptions to whom should the reformation of character should apply to the obvious constitutional violation. Oyler v. Boles, 368 U.S. 448, 456, (1961).Congress understood that it is required one as ["**transparency**"] lengthy sentenced, thereupon have provided ("USCIS"), ("DHS") broad discretion in determining the nature and character of their criminal misconduct before afforded them the privileges to establish good moral character and extenuating circumstances.8 C.F.R. §§ 316.10 (b) (3) (III);United States v. Dang, 488 F.3d 1135, 1138-39 (9th Cir.2007)("upholding validity of regulation because requiring consideration of the plaintiff's unlawful acts during the five-year moral character

period -whether or not plaintiff convicted for the acts during that period is not beyond the agency's statutory mandate, with the exception that he met the requirement of an average citizen, and produce direct evidence from the court, or his probation, parole and/or indirect evidence of sufficient probative force to reflect the evidence issues of material facts").Rhoads v. FDIC, 257 F.3d 373, 391-92 (4th Cir.2001);8 C.F.R. §§ 316.10 (c) (1);316.10 (2) (b) (v).Meanwhile, congress understood that while traffic violations admitted was not really serious when enacted the laws, it expressed the objective statutory language before us by addressing, whom should be considered as the standard of the ["**average citizen**"] in the ["**community of residence**"] however, with certain ["**limitation**"] to which he is favorably disposed toward the good order and happiness of the united states. 8 C.F.R. § 316.2 (a) (7);Abusamhadaneh v Taylor, 873 F. Supp.2d 682, (E.D.Va. 2012), and congress expressed them in fashion with specific word:["**standard**"] consistent with it statutory language, simply does contemplate a claim for "sovereignty";despite the limitation surrounding them, it has recognized the statutory language of encouraging them the sovereign right of self-government and its authority to foster the general welfare and education as an average citizens consistent with the constitution of the united states. Dolan v. Transport Workers Union, 746 F.2d 733, 739-40 (11th Cir.1984).As such, it reflects the fact that minor criminals retain attributes of sovereignty with both their members and territories. Application of Murra, 178 F.2d 670, 672 (7th Cir.1949); 8 U.S.C.A. § 1427 (a), which explain that every minor criminal has a constitutional right to remain with that sovereignty until death unless he/she voluntary relinquishes it. Afroyim v. Rusk, 387 U.S. 253.This case presents an instance of 'the most explicit language' which leaves room for questioning congress' intent together when enacted §1101 (a) (3), which defines aliens as any person not a "citizen" or "national" of the united states. Perdomo-Padilla v. Ashcroft, 333 F.3d 964, 970 (9th Cir.2003).The point is:these words, read together, could reasonably mean different things; hence, they are ambiguous, One more ambiguity puts the first["**average citizen**"] to Chevron question from 8 C.F.R. §316.10 (2) (b) (v). However, the agency prefers to mix-and-match definitions of "minor criminals" and ["**transparency**"], it is beyond dispute that the statute is silent regarding how, exactly, the agency should assess

whether a minor criminal should have the benefits of the reformation of character.8 C.F.R. §316.10 (c) (1), or otherwise unintelligible that is true substance, if any is well dis-guided.(Chevron, 467 U.S. At 842-43).If the intent of congress is clear, that is the end of the matter ;for the court, as well as the agency must give effect to the unambiguously express intent of congress. Id.842-43,if however, the statute is silent, or ambiguous with respect to the specific issues, congress not spoken clearly, and a permissible agency interpretation of the statute merit judicial deference. Thus, the objective of chevron step one is not interpreting and apply the statute to resolve a claim, but to determine whether congress's intended to enact it, or was so clear as to foreclose any other interpretation. Grapevine Imps., Ltd. V. United States, 636 F.3d 1368 (Fed. Cir.2011).Under the first step of Chevron, a reviewing court is to employ traditional tools of statutory construction to determine whether congress addressed the precise question at issue. Chevron, 467 U.S. At 842,843 n.9.Courts, therefore begins this analysis with the text and structure of the statute. Cabell Huntington Hosp. V. Shalala, 101 F.3d 984 (4th Cir.1996).After all, the plain language of the statute is the most liable indicator of congressional intent. Schafer v. Astrue, 641 F.3d 49, 57-58 (4th Cir.2011), additionally, the fourth circuit has described legislative history as one of the traditional tools of interpretation to be consultative to Chevron step one. Elm Grove Coal Co. v. Director, 480 F.3d 278, 301 (4th Cir.2007).Here, as mentioned, the court begins it chevron step one inquiry into the congress's intent, as it must, from the fundamental cannon that the statutory interpretation begins with the language of the statute itself. Demby v. Schweiker, 671 F.2d 507, 510 (D.C.Cir.1981). Indeed, these concerns animate the review of agency action under the "Chevron doctrine", if then intent of congress is not clear, that is not the end of matter, as plaintiff's bears burden to prove his case by a preponderance of the evidence is establishing extenuating circumstances, along with the evidence that he met all the requirements for naturalization, and in particular, the matter of his moral character pursuant to the Immigration and Nationality Act ("INA"), or any other section of the act which the agency hereby denied, for the courts, as well as the agency, must give effect to unambiguously express intent of congress. Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842, (1984); White v. Black, 190 F.3d 366.

## A. INTENTIONAL DISCRIMINATION SHOWN BY CLASSIFICATION

Plaintiff is seeking naturalization, and he must strictly comply with the requirements for citizenship established by Congress, and bears the burden of establishing eligibility for citizenship in every respect. 8 U.S.C.A. § 1427; In re Pisciattano, 308 F. Supp. 818 (D. Conn.1970). And it is settled that a Drunk driving must be considered as a strong negative factor in assessing moral character of a naturalization of any applicant under the Immigration and Nationality Act, ("INA").8 C.F.R. §§ 101(f) (3), 316 (a), 8 U.S.C.A. §§ 1101(f) (3), 1427 (a), which is contrary to this case concerning, as he was deprived the equally protected clause of the attributes of his sovereignty with the members and the territories which congress established under the fourteenth amendment of the constitution of the united states, and was violated due to his classification 8 U.S.C.A.§§ 1422, 1452.In such case, he must demonstrated that he is "class of one" under the equal protection argument, he must establish that the officer, as well as the Agency misconducts was intentionally treated him differently, from other similarly situated, without a rational basis for that differences in treatment, and that difference in treatment was due to malicious or bad faith intent on part of the agency to injury him, and he establishes on the records that he qualifies as a "class of one" as the victim of arbitrary or invidious distinction from the other applicant's similarly situated, and there is evidence here, that he was subjected to 'irrational and wholly arbitrary acts' and 'intentional disparate treatment in regard of the denial of his naturalization application under the (INA).Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir.2001); Meanwhile, Consistent with congress intent when enacted the law, plaintiff in this case has been subjected to irrational and wholly arbitrary acts, and the denial his citizenship in violation of the above statutes, aforementioned one, section of the immigration and naturalization acts provides as follow:("the right of the plaintiff in this case to be a naturalized citizen of the united states shall not be denied or abridge because of his race, sex or because he is married").8 U.S.C.A. § 1422; Walker v. Gomez, 370 F.3d 969, 978 (9th Cir.2004). The question we must ask, whether or not the Statute enumerating classes of people eligible for United States citizenship uses the words "white persons" as meaning primarily the European peoples who constituted the class

from which virtually all of immigration to United States has come and who readily become assimilated into our civilization. Nationality Act of 1940, § 303, 8 U.S.C.A. § 1422. "African" are not "white persons" within meaning of statute enumerating classes of people should have been eligible for United States citizenship, and hence a native of "African" should not be eligible for citizenship in supporting that, The court McNab, said that, "he is a person racially qualified for naturalization, He has met the residence requirements, He has the requisite knowledge of government and can read and write the English language, He is not a person of the subversive class, He is not of a class of persons permanently debarred from naturalization, He is a person attached to the principles of the Constitution of the United States".McNab 121 F. Supp. 938 (E.D.La. 1954), and it is clear that the difference between McNab, and plaintiff in this case is racially qualified, if he had violated on charges of Driving while license suspended, most likely he would have his citizenship, and the court did not want to violated §316.10 (b) (3) (II).Furthermore, In re Najour (C.C.) 174 F. 735 In admitting to naturalization the petitioner, Costa George Najour, quoted that " I wish to say this: Although the term 'free white person' is used in the statutes (Rev. St. Sec. 2169 (U.S. Comp. St. 1901, p. 1333)), this expression, I think, refers to race, rather than to color, and fair or dark complexion should not be allowed to control, provided the person seeking naturalization comes within the classification of the white or Caucasian race, and I consider the Syrians as belonging to what we recognize, and what the world recognizes, as the white race. The applicant comes from Mt. Lebanon, near Beirut. He is not particularly dark, and has none of the characteristics or appearance of the Mongolian race, but, so far as I can see and judge, has the appearance and characteristics of the Caucasian race".In such, the test requires a sufficient showing that the plaintiff was similarly situated to other persons and was singled out for differential treatment from the Agency in a manner the subjected him to "irrational and wholly arbitrary acts" and "intentional disparate treatment". Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("An agency deprives another of a constitutional right, within the meaning of 8 U.S.C.A. § 1422, if it does an affirmative act, participates in another affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which the plaintiff concerns about.");Preschooler II v. Clark County School Bd. of Trustees, 479 F.3d 1175, 1183 (9th Cir.2007)

("finding implied caused of action where the statute provided that such as plaintiff may sue the officer...in any district court of the united states ..."). As explained before consistent with the statutory language, plaintiff was single out due to the fact that congress's used the words ["**Average Citizen**"]; 8 C.F.R. §316.10 (2) (b) (v). For those as plaintiff in this case, who met all the requirements of the Immigration and Nationality Act, ("INA"), who was classified as not serious criminal, or uncommon, and unusual. And congress said that, "it is uncommon to classify every "African" with all of the Africans misconducts, or for those that, their status as serious criminals that might faced disruption and denial his application for citizenship". Nagahi v. INS, 219 F.3d 1166, 1171 (10th Cir.2000), or because he is a person of the subversive class, "African" are not "white persons", he should not have been classified as "the habitual drunkard".that constitutes a big difference when congress enacted the laws. 8 U.S.C.A. § 1101 (f), which provides for the purposes of this chapter----:

> **No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--* * ***

One who at any time has been convicted of the crime of habitual drunkard should have been denied citizenship. 8 U.S.C.A. § 1101(f) (1).Certainly in the 1952 Act Congress expressed its intention, i. e., that a man who committed the habitual drunkard should not become a citizen of the United States. Fisher v. Coleman, 486 F. Supp. 311 (W.D.Va.1979). With the light suggested by that unequivocal declaration of congressional intent and by the teachings of the seventh circuit, we hold that in view of the plaintiff's conviction of charges of driving while license suspended and incidentally the fact that he was on a panel institution for two-days (2) during, or part of the five-year period, the plaintiff has not shown lack of good moral character during the prescribed statutory period. Therefore, he should not be denied. O'Sullivan v. U.S. Citizenship and Immigration Servs., 453 F.3d 809, 811 (7th Cir.2006).Therefore, if the officer, or the agency attempted to compare the facts of this case with those one Edward v. Valentine, which was neglected to mentioned, moreover, he was entrusted to the American society where he had been convicted on multiple occasion for driving under the influence, and was known to be the habitual drunkard. [926 so.2d 315 (Ala.2005)];in such case, Holding that convictions of driving while license suspended compare

with a habitual drunkard is sufficient to create an inference of racial classification, and national Origin discrimination claims. Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1166 (6th Cir.1996). Where plaintiff alleges individual disparate treatment but relies on circumstantial evidence of discrimination, a familiar tripartite burden-shifting test governs the agency, and the court's analysis of whether there remains a triable issue of fact. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir.2000).In the context of redistricting, where race is considered only in applying traditional redistricting principles along with requirements of the denial of plaintiff's application, and the exclusion of the Voting Rights Act, 42 U.S.C.A. § 1973 et seq, to which he could have voted for "President "**Obama**";Shaw v. Hunt, 517 U.S. 899, 904-05, 116 S. Ct. 1894, 135 L. Ed.2d 207 (1996).Moreover, the constitution wrong occurs when race become the dominate and controlling consideration. Id.905. (quoting Miller, 515 U.S. At 915-16), or when the district's shape and demographics indicate that traditional race-neutral redistricting principles, include "national origin", but not limited to compactness, contiguity, and respect for political subdivision or communities defied by actual share interest, where subordinal to racial consideration as to that race was the predominant factor, and was singled out for differential treatment from the agency in a manner the subjected him to "irrational and wholly arbitrary acts" and "intentional disparate treatment."Prescott v. Higgins, 538 F.3d 32, 40-41 (1st Cir.2008).In the redistricting process, which plaintiff alleges that the agency irrational and wholly arbitrary acts resulted "Africans" having less opportunity to participate in the naturalization process than other applicants of the Caucasian race. Miller v. Johnson, 515 U.S. At, 916.(emphasis added).The eleventh circuit has also explained when strict scrutiny applies:A court must apply strict scrutiny to predominately race-based redistricting, or reapportionment plans, in order to determine whether race is the predominant factor underlying particular district design, a court must find that wholly arbitrary acts by the agency has a subordinated traditional race neutral redistricting principles such:geographical, compactness, contiguity and respect for political subdivision to race. A court may base such as finding either on circumstances evidence regarding plaintiff shape and demographics, or on direct evidence arbitrary purpose. Davis v. Chiles, 139 F.3d 1414, 1417 n. 5 (11th Cir.1998).In other words, even if race was not the predominant factor in this case, a restrictive process is unconstitutional if it

fails strict scrutiny review requires an analysis of not only the agency's purpose or goal, but also the means by which that purpose is sought to be obtained. Johnson v. Mortham, 915 F. Supp. 1574, 1580 (N.D.Fla.1996)("When race-based action is necessary to further a compelling interest, such action is within constitutional constraints if it satisfies the 'narrow tailoring' test.").The narrow tailoring requirement mandates that agency implement its legitimate purpose "by means that do not impose disproportionate harm on the interests, or unnecessarily trammel the rights, of innocent individuals directly and adversely affected by a plan's racial preference.").Wygant, 476 U.S. At 287.The Supreme Court has stated that an affirmative action program survives intermediate scrutiny if the proponent can show it was "a product of analysis rather than a stereotyped reaction based on past conducts." Metro Broadcasting, Inc. v. F.C.C., 497 U.S. 547, 582-83, 110 S. Ct. 2997, 111 L. Ed.2d 445 (1990).Here, race is the dominate and controlling consideration when the officer, and the agency denied plaintiff application, where, he is "African of Republic of Haiti"and the traditional redistricting principals subordinated racial. Bush, 517 U.S. At 958.It should be noted that, plaintiff, never drunk, smoke or used any other substances of influence of his entire life, and neither he was unprofessionally dressed the day of his "Oath of allegiance" for such irrational misconduct, or a stereotyped reaction based on past conducts. ECA,122 F.3d at 910.The Third Circuit summarized the holdings of the Supreme Court when applying intermediate scrutiny as requiring that the proponents of the law show that it was the "product of analysis rather than a stereotyped reaction based on past conducts." Contractors' Ass'n, 6 F.3d at 1010 (citations omitted). This requires that the Agency's present probative evidence supporting the stated irrational act was not for racial preference.;see, e.g., Harrison & Burrowes Bridge Constructors v. Cuomo, 743 F. Supp. 977, 1002.In ascertaining that purpose, however, we begin our consideration with the basic premise that Congress did not intend to exclude an applicant with "integrity" for the purpose stereotyped reaction based on past conducts.8 C.F.R. §§ 316.10 (b) (3) (I) (II); Mississippi University for Women v. Hogan, 458 U.S. 718, 725.

## B. BEING A PERSON OF INTEGRITY

Informing congress intent, how to define integrity;arguing"shall be considered one who's supported his

dependents is not different from what is meant to be a human being with integrity, it regards the scope of subsection §316.10 (b) (3) (I) (II) of the INA, and plaintiff obligation is clear on the face of the statute, and he has demonstrated that he has been willfully supported his children, and wife as a matter of one who failure to pay child support, if he had any.18 U.S.C.A. § 228; Lopez, 514 U.S. At 115; Etape v. Napolitano, 664 F. Supp.2d 498, 507 (D. Md.2009).Drawing all reasonable inference in the plaintiffs favor, a reasonable fact finding could determine that his relationship with his wife contain to have an existing marriage with her, at the time of the "Oath of allegiance"even at the present time, in such case where there is sufficient evidence of agreement to be married, and there was not generally objective evidence of the non-proponents agreement during the interviewed by the officer of the agency to determine his eligibility of naturalization. For example, in Lewis v. Anderson, the parties had adopted two children, each time identifying themselves in legal documents and testimony as Husband and wife. Lewis,173 S.W.3d.556,559 (Tex App...Dallas 2005,no Pet).Therefore, plaintiff suggesting that, if the officer had done appropriate investigation, in particular, Testimony from his wife, and the outcome of the procedures could have been different, as the court in Lewis relied heavily on the evidence of the none -proponents willingness to sign or accept without question the legal document referring to a legitimate existing marriage. Id.562.similarly, the Agency, or the court should consider on the negligence by the officer, and granted plaintiff citizenship. Furthermore, in Hart v. Webster, the court noted "that the couple had exchanged wedding bands, and had filed joint federal tax return", similarly to this case in question, where there is evidence in the agency records that the plaintiffs had provided years of his joint federal income tax returns.(Tex. App...Austin.2006). Legally married spouses maintain a special status as a single unit in many areas of the law, and the action of husband and wife cannot be separated from one another as concretely as unrelated people or entities, for examples, spouses filling joint federal income tax returns are generally jointly and severally liable for the full amount of tax due on their combined incomes. 26 U.S.C.A. § 6013;United States v. Barnes, 883 F. Supp.2d 1156, 1163 (M.D.Fl.2011). As such, it tells us that about Congress's intent regarding the terms, ["**Community of residence**"] is defined as those files joint federal tax returns is modified by words "proposed" which typically means something was has been put

forward for consideration consistent with average citizen. Cheek v. United States, 498 U.S. 192, 199-200, (1991) ("In determining the plainness or ambiguity of statutory language we refer to the language itself, the specific context in which that language is used, and the broader context of the statutes as a whole.");United States v. Wilson, 290 F.3d 347, 353 (D.C.Cir.2002).Where, however, if the statutory language is ambiguous, the court must look beyond the text for the other indicia of congressional intent. Paisley, supra, 712 F.2d at 695-96.As one could have imagined, it is undisputed that plaintiff's had met all the criteria to be the naturalized citizen, or as one should have been considered as the average citizen of the community of residence, however, he bears burden of establishing a dear showing of immediate irreparable injury, as he presented in this litigation as well. Hohe v. Casey, 868 F.2d 69, 72 (3d Cir.1989)(citation omitted).Additionally, a showing of immediate irreparable harm is insufficient if the harm will occur only in the indefinite future. Wesley,569 Fed. Appx.at 125 (quoting campell,977 F.2d at 91).As the plaintiff's allegations reflect that he was subject to violations of his constitutional rights and that the agency's refused to act to end the violations. Elliott v. Lynn, 38 F.3d 188, 191 (5th Cir.1994), and this is not to exclude that our reading of the statutes, not only respect of congress intent, and to curb meritless claim of naturalization, but ensures that meritorious lawsuits are not swept away in the process. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir.2000).Thus, for the same reason that the plain language of the acts of the (INA) cannot be read to create an implied private right of action, and it should not be read to create, or irrational, wholly arbitrary acts, and racial classification as opposed to congressional intent in the word of ["**residence"**];and those who had contributed in the ["**community**"], As a result of the liberal policy promulgated in 8 C.F.R. §§ 316.10 (b) (3) (I) (II), the decisions by the agency, generally not kept within the strict dictionary definitions of the meaning of terms within "residence"which defines by Merriam-Webster Dictionary, (4th ed.2002); as 2) "the fact of status of living or staying in place while working going to school, carryout out official duties, etc. esp. long enough for certain rights and privileges, etc", and it was based upon Congress's intent to provide the term residence, or primary residence equate with the domicile, a person may have one or more residences, but can only have one primary residence. De Jesus-Serrano v. Sana In v. Mortgage Bankers, Inc., 552 F. Supp.2d 191 (D.P.R.2007).As such, is a further strong

indicia of Congress' intent on this subject consistent a close continued marital association is obviously intended by such statute. 8 C.F.R. §§ 316.10 (b) (3) (II), therefore, plaintiff application should have been evaluated on a case by case basis taking into account the above elements describes, as the elements enumerated, and the standard of the average citizen in the community of residence.8 C.F.R. § 316.10 (a) (2); Repouille v. United States, 165 F.2d 152, 153 (2d cir 1947).As discussed earlier, Congress' intended that those who had contributed in the ["**community**"], shall have evaluated as one of integrity person, and should take into account …the standards of average citizen in the community of his residency. Puciaty v. Dept of Justice, 125 F. Supp.2d 1035, 1040-41 (D. Hawaii 2000):Therefore, by supporting plaintiff case, the second circuit, stated that, in the circumstances, are bound to cause suspicions. However, under the evidence, we cannot say that, he shows lack of good moral character, indiscreet or ill-advised as it may have been, furthermore, the Court said: "we do not require perfection in our new citizens".'Klig v. United states, 296 F.2d 343, 346 (2nd Cir. 1961).Thus, a person may have good moral character though he has been delinquent upon occasion in the past ;it is enough if he shows that he does not transgress the acted cannon more often than is usual. Posusta v. United States, 285 F.2d 533, 535 (2d Cir.1961).Congress' intent may be "explicitly stated in the statute's language, or implicitly in its structure and purpose", however, the statute is not penal; it does not mean to punish for past conducts, but admit as citizen those whom likely to prove law abiding and useful. United States v. Gonzalez, 491 F.2d 1202, 1204 (5th Cir.1974)."Circumstances may changed us all" At bottom, we think that it is unclear what Congress's intent was on this point, and in the absence of such information, we exercise a presumption under 8 U.S.C.A. 1427 (e), which provides that :

> **In determining whether the applicant has sustained the burden of establishing good moral character and the other qualifications for citizenship specified in a subsection (a) of this section, the Attorney General shall not be limited to the applicant's conduct during the five years preceding the filing of the application, but may take into consideration as a basis for such determination the applicant's conduct and acts at any time prior to that period.**

If congress intention is not unmistakeably clear recourse to legislative history will be futile, because by definition the rule of Atascadero, will not meet. 473 U.S. 234, in fact, as congress used the word ["**community**"], technically feasible, and economically viable, as one that contributed as the standard of the average citizen in the

community residence, and such a person made substantial contribution to enhance the welfare of his community, that individual consistent with congress intent as a person with "integrity", in such case if plaintiff application was denied because of his social disadvantage group that is a different issue which must address to the agency, and the court, because he is native, or a former citizen of republic of Haiti, and this is a necessary mechanism to preserve Congress' intent underlying the conditional of his right. 8 U.S.C.A. 1422; 8 C.F.R. § 316.10 (2) (b) (v);316.10 (c) (1); Freeman v. Gore, 483 F.3d 404, 410 (5th Cir.2007);or whether he is a member of a presumptively socially disadvantage, then he must establish social disadvantage by a preponderance of the evidence by considering the condition of economic of Haiti, a country that he left for most of his entire life, with substantial disruption of living condition based on the environment disaster, within that country, specially, the devastation resulting from a series of earthquakes, tropical storms, a volcanism eruption, and congress understood that individual in such a situation could have been subject to economically disadvantaged, racial, or ethnic prejudice or culture bias because of their identity as a member of a group without regard their individual qualities. B.K. Instrument, 715 F.2d at 719, Moreover, if Congress's intent were clear, we would not need to engage in the special-factors analysis at all, because the statute does not impose to deny social disadvantage individual's, because of race, gender and national origin., and It has been determined in the united states, deprivation of benefits has been socially and/or economically disadvantaged for the basis for the above determination is as follows: There is clear evidence that plaintiff has been deprived of the opportunity to establish that he meet all requirements for his naturalization.42 U.S.C.A. § 2000d; Bakke, 438 U.S. At 372-76. And it has further explained that many similarly individuals has been deprived of the opportunity because of their identification as a member of certain group that have suffered the effects of discrimination practice or similar invidious circumstances which they have no control, such as groups include:"Black Americans", or"African American".United States v. Gometz, 730 F.2d 475, 478 (7th Cir.1984); 8 U.S.C.A. § 1422;8 C.F.R. § 316.10 (2) (b) (v);316.10 (c) (1); thus, congress has provided clear, intelligible direction regarding who can be deem suffered the effects of discrimination practice for the purpose of the statute, what is more?, congress has concerns can compete on an equal basis in the naturalization procedure.

United States v. Texas Education Agency, 467 F.2d 848 (5 Cir. 1972)("noting that a delegation need not to be tested in isolation").The court may examine the purpose of the act, its factual background and the statutory context, in additional to the statutory itself, as plaintiff asserts that the irrational conduct by the officer, and the agency conferred them the unlimited discretion to decide whether racial, or ethnic prejudice, and cultural bias has occurred with respect to deny his application, and it is simply correct in this case because of the agency interpretation (arguing deference to ("USCIS") interpretation).The court should agree with the sixth circuit's interpretation, and the Medina, courts analysis of the issues raised by the plaintiff here, many of which align with this case argumentation, Medina, 65 F. Supp.3d at 429-36.Assuming aguendo, that base on the denial by the agency, or that 1) congress intended different meaning for the words "support dependents"and "existing marriage"as individual with integrity from lack of integrity;2) if plaintiff interpretation is correct, there would be no reason for the sub-section § 316.10 (b) (3) (III) to separate, or refer to eligibility as a threshold requirement in the sub-section § (b) (3) (I) (II) and to failure to maintain naturalization as bar eligibility in sub-section § (b) (3) (III); 3). The plain language of sub-section § (b) (3) (III) addresses only the bar to "The Habitual Drunkard"in denial of a naturalization application; 4) ("USCIS") interpretation conflicts with portion of the statute as congress used the word [or] between them to exempt other categories of applicants from sub-section § (b) (3) (I) (II);such exemption established for those covered by charges of driving without license suspended offenders, and confined to a panel institution for only two -days [2 days] pursuant to his conviction(s); 5) The court should apply Serrano ;and 6) Their interpretation is consistent with congress intent. Finally, the court must echo other courts sentiment that ("USCIS') statutory interpretation would create or created and absurd result in this particular case, as stated to equently in Medina, as it equally applicable here :to interpret the statutes in the manner suggested by the congressional intent the court would have to find that despite allowing beneficiaries to naturalize not exceed six months [6 months] when committed certain crimes that was confined to a panel institution, as congress intended that such a plaintiff seems to be the exact type of person that it would have in mind to allow naturalization, he has been in the united states for about the entire of his life, he has roots here, his wife and minor

children are here, which are all united citizens, and he is a person with integrity, contributed member of society, such denial had negative effect of his family united citizens. United States v. Tocco, 200 F.3d 401, 435 (6th Cir.2000) We are disturbed by the ("USCIS") incessant and injudicious opposition in case like this, where the only purpose seems to be a general policy of opposition for the sake of opposition, or racial classification as abusive power by the USCIS, and its employed contrary to the above statutes. The court, or the agency itself should conclude that, its decision was arbitrary and capricious, and they should reverse the decision and demands to USCIS for further review consistent with congressional intent. Garcia-Mir v. Smith, 766 F.2d 1478, 1490 (11th Cir.1985);8 C.F.R.§;316.10.

## X. MANDATORY ADHERENCE FOR USCIS GOVERNS, OR REGULATES

Section 316 (a) is the regulation policy adopted by the ("USCIS"), ("DHS") to determine who, among the applicant's for naturalization should be found the lack of moral character, if during the statutory the applicants committed in an act appears relevant to determination of his present moral character. Moon Ho Kim v. Immigration and Naturalization Service, 168 U.S.App.D.C. 283, 514 F.2d 179 (D.C. Cir. 1975).Therefore, plaintiff heavily rely on INS v. Yang, by supporting his claims, as "Justice Scalia", delivering the court's opinion, stated that though the Agency's discretion is unfettered at the outset, it announces and follow ...by rule or settled course adjudication...a general policy by which its exercise of discretion will be governed, and irrational departure from that policy [as opposed to and avowed alternation of it] could constitute and action that must be overturned as arbitrary, capricious, [or] and abuse of discretion within the meaning of the administrative procedures act ("APA"); 5 U.S.C.A. § 706 (2) (A); Yang 519 U.S. 26.The officer asserted that sub-section (a) (7) thereto, rendered plaintiff ineligibility for naturalization, and the express language of the statute clearly vested the ("USCIS"), ("DHS") with broad discretion to make a such a determination, However, congress never indicated that his offenses for the purposes of § 101 (f), or dictated or precluded form establishing good moral character. Egan, 484 U.S. At 528-529.Thus the second paragraph express that his offenses must met the breach of the peace

requirement, a violation of the public order, a disturbance of public tranquility, by an act, or conduct inciting to violence or tending to provoke or excite others to breach the peace, include any violation of any law enacted to preserve peace, and good order. 8 U.S.C.A. § 1101 (f) ;Stevens v. United States, 190 F.2d 880 (7th Cir., 1951).The higher court in Morton stated that "and agency must follow its own procedures even though the procedure is more stringent that would constitutionally required, where the supreme court held that the "Accardi doctrine" also applied to procedure rules found in an agency's internal manual".Morton v. Ruiz, 415 U.S. 199.Moreover, the bureau of Indian Affairs (BIA) denied the respondents for requesting for general assistance benefits because the respondents failed to satisfy a geographic limitation promulgated by the bureau. Id.205.The court said:where the rights of individual are effected, it is incumbent upon agencies to follow their own procedures, likewise, the eight circuits has held on numerous occasion that pursuant to the "**Accardi doctrine**", an agency must follow itself imposed procedural rules when making discretionary decision that affect an individual's rights. Munnelly v. United States Postal Service, 805 F.2d 295, 301 (8th Cir.1986); Ex. rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S. Ct.

## XII. DEPRIVATION OF RIGHTS AND PROVILEGES.

Section 1983 of the Civil Right Act of 1971 creates a cause of action for the deprivation of rights, privileges or immunities secured by the Federal constitutions, or Federal laws by any person acting under color of state laws. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir.1998); Swint v. City of Wadley, 51 F.3d 988, 999 (11th Cir.1995).To prevail in this claim for relief, plaintiff must establish that 1) he has been deprived of a right, privileges, or immunities secured by the constitutions, or Federal laws. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir.1989).Plaintiff sues the respondents in this case in both individuals and official capacity, which is the function equivalent of a suit against the Agencies and other entities within the meaning of the ("APA"), and within the scope of § 1983.McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir.2004).However, a § 1983 claim against the agencies must be predicted upon an injury inflicted by policies or custom. Mingo v. City of Mobile, 592 Fed. Appx. 793, 802-03 (11th Cir.2014) (citing City of Canton v. Harris, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed.2d

412 (1989)).An official policy or custom maybe shown in several ways, including the decision making officials, and practices so persistent and widespread as practically have the force of law. Ware v. Jackson County, 150 F.3d 873, 880 (8th Cir.1998).Alternatively, he must demonstrate an official policy by shown that the agencies have policies of inadequate training, or supervision, under this theory, a facially lawful agencies' action may violate the plaintiff rights, it taken with deliberate inference as its known, or obvious consequences. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 407, 117 S. Ct. 1382, 137 L. Ed.2d 626 (1997); Brown, 520 U.S. at 407,117 S.Ct. at 1390.

## A. INADEQUATE TRAINING, AND SUPERVISION

An agency or agencies can only be liable when it commits constitutional violations pursuant to the entity's official policy or custom, or due to inadequate training rising to the level of deliberate indifference. Monell, 436 U.S. At 694, Inadequate training of the officers may serve as a basis for liability under § 1983 only where the failure to train amounts to deliberate indifference to the rights of the plaintiff with whom the officers come into contact. City of Canton, 489 U.S. at 388,If the plaintiff fails to establish a constitutional violation by an individual officer, the ("USCIS") unit cannot be held liable for a failure to train under § 1983. Watkins v. City of Battle Creek, 273 F.3d 682, 687 (6th Cir.2001).And, ("USCIS") failure to adequately train its officers can be so egregious as to warrant a finding that it amounts to a policy or custom for which the agency should be held responsible. City of Canton v. Harris, 489 U.S. 378, 389-90, 109 S. Ct. 1197, 103 L. Ed.2d 412 (1989).As explained, the plaintiff has raised the issues of material fact with respect to his assertion that ("USCIS") practice of inadequate training led to a constitutional violation. Brown, 520 U.S. At 406-10, Furthermore, it is sufficient for the plaintiff to point out alternatives which could have been pursued by the ("USCIS"). Which, they have a policy of inadequate training so obvious as to rise to the level of deliberate indifference to the rights of the plaintiff in this case, he has satisfied this burden by demonstrate a policy of inadequate training.8 C.F.R. § 316.10 (2) (b) (v);316.10 (c) (1).The plaintiff must also establish that the Agency policy or custom was the proximate cause of the injuries sustained. Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir.1996); Webber v. Mefford, 43 F.3d 1340,

1344-45 (10th Cir.1994).A claim of inadequate training may properly serve as the basis for § 1983 liability as plaintiff demonstrates that the ("USCIS") "deliberate indifference" to proper adequate training was the "moving force" behind his alleged injuries. Canton v. Harris, 489 U.S. 378, 391, 109 S. Ct. 1197, 1206, 103 L. Ed.2d 412 (1989).

## B. DELIBERATE INDIFFERENCE

What must be alleged that "acts" or Omissions sufficiently harmful to evidence deliberate indifference to serious constitutional violation. Dique v. N.J. State Police, 603 F.3d 181 (3d Cir.2010) In any event, the Second Circuit has stated that liability of a supervisor can be predicated on inaction. Hague v. C.I.O., 307 U.S. 496, 59 S. Ct. 954, 83 L. Ed. 1423 (1939). Where conduct of the supervisory authority is directly related to the denial of a constitutional right it is not to be distinguished, as a matter of causation, upon whether it was action or inaction." Duchesne v. Sugarman, 566 F.2d 817, 832 (2d Cir. 1977).This seems to be the logical import of holding the supervisor liable for the natural consequences of the officer conduct because fact situations can readily be imagined where the natural consequence of inaction would be the deprivation of a constitutional right by a subordinate. Metge v. Baehler, 762 F.2d 621, 625 (8th Cir.1985).The Plaintiff Expresses the view that Where the actions of subordinate employees are concerted, the failure of supervisors to control their behavior may, in effect, create a De facto departmental policy. 8 C.F.R. § 316.2 (a) (7) and 316.10 (a) (1), (a) (2) and (b) (3) (III); Wilkinson v. Ellis, 484 F. Supp. 1072 (E.D.Pa.1980). It is not clear whether "concerted" refers to an agreement among the subordinate employees or only to a pattern of similar actions by the subordinates. Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir.1997). In determining what may be the elements of liability for inaction, it may be useful to distinguish between two contexts. The first is where action is claimed to be required to remedy a specific situation, the continuation of which causes a deprivation of constitutional rights. Doe v. New York City Dep't of Social Services, 649 F.2d 134, 144-45 (2d Cir.1981). The second is where action is claimed to be required to prevent the next in a series of previous episodes, indicating a pattern of deprivation of constitutional rights.

Courts have imposed liability when the supervisor had actual knowledge of the conditions. Stallworth v. Illinois Cent. Gulf R.R., 690 F.2d 858, 863 (11th Cir.1982). That was the situation in Wright, less certain is liability when the supervisor should have known of the situation. It is stated in Wright that the warden "knew or should have known" of the violation. Wright v. McMann, 460 F.2d 126 (2d Cir. 1972) However, the decision indicates that the "should have known" element is met not simply by an inference as to what a reasonable man should have known, but by the specific provisions of state law which charged the warden with knowledge. Id. This same approach was used in. United States ex rel. Larkins v. Oswald, 510 F.2d 583 (2d Cir. 1974).For purposes of determining whether supervisory official is liable for civil rights violation committed by subordinates on basis of deliberate indifference manifested by actual intent encompasses both specific intent to violate the plaintiff's constitutional rights and general intent to perform the act whose natural consequence is deprivation of plaintiff's rights. Swift & Co. v. United States, 196 U.S. 375.Within rule that supervisory official is liable for civil rights violation committed by subordinates on basis of deliberate indifference manifested by recklessness, is measured only by objective standard, that is, whether supervisor's conduct evidences such disregard of plaintiff's established rights that conduct cannot be characterized as being in good faith and respondents' subjective good faith or state of mind is irrelevant. 42 U.S.C.A. § 1983.In Owens, it was held that such liability arises when the failure to supervise or the lack of a proper training program [is] so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of the plaintiff's constitutional rights. Owens v. Haas, 601 F.2d 1242, 1246 (2d Cir.)

## XII. VIOLATION OF THE EQUAL PROTECTION CLAUSE

The equal protection clauses of the fourteenth amendment provides that" no state shall make or enforce any law which shall... deny any person within its jurisdiction the equal protection of the laws. U.S Const. Amend XIV.§ 1.This clause "is essentially a direction that all persons similarly situated should be treated alike .Olech, 528 U.S. at 562,(explaining that the purpose of the equal protection clause of the fourteenth amendment is to secure every person within a party jurisdiction against international; and arbitrary discrimination,whether occasional by express

terms of a statute,or by its improper execution through duly constituted agents or officials.(internal quotation Marks omitted); Campbell v. Rainbow City, Alabama, 434 F.3d 1306, 1313 (11th Cir.2006).To establish an equal protection claim, the plaintiff must demonstrate that a challenged action was motivated by an intent to discriminated. Washington v. Davis, 426 U.S. 229, 96 S. Ct. 2040, 48 L. Ed.2d 597 (1976).Discriminatory intent may be established by evidence of such as factors as ,substantial disparate impact,disparate treatment, facially neutral,unjustified standard, suspect class, and racial classification, a history of discriminatory official actions, procedural and substantive departure from the norms,generally followed by decision maker,and discriminatory statements in the legislature or administrative history of the decision.. Arlington Heights v. Metropolitan Housing Corp., 429 U.S. 252, 266, 97 S. Ct. 555, 563, 50 L. Ed.2d 450 (1977); Board of Regents v. Bakke, 438 U.S. 265,

## A. FACIALLY NEUTRAL

Claims of disparate treatment may be distinguished from claims that stress "disparate impact." Griggs v. Duke Power Co., 401 U.S. 424, 91 S. Ct. 849, 28 L. Ed.2d 158 (1974) The latter involves the denial of naturalization practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Huguley v. Gen. Motors Corp., 52 F.3d 1364, 1370-72 (6th Cir.1995). Proof of discriminatory motive ... is not required under a disparate-impact theory,,and Congress's intent to prevent discrimination based on inaccurate and damaging stereotypes suggests that incidental discriminatory effects arising from facially racial-neutral policies. 8 U.S.C.A. § 1422. As such, it seems unlikely that plaintiff could ... allege that the strict enforcement which he suffered was "affected by" the showing of arbitrary and irrational difference between results of two particular, or a combination of applications of facially neutral statute. 8 C.F.R. § 316.2 (a) (7) and 316.10 (a) (1), (a) (2) and (b) (3) (III). If classification challenged was created on face of a statute, the plaintiffs could prevail by showing rational relationship to ("USCIS") purpose, but with neutral legislation unequally applied, so violation would be shown absent proof of discriminatory intent); Northeast Jet Center, Ltd. v. LeHigh-Northampton Airport Authority, 767 F. Supp. 672, 675, 677-78

(E.D.Pa.1991).Unlike a disparate treatment claim, under a disparate impact claim the plaintiff need not show that the ("USCIS") intended to discriminate, Rather, the plaintiff need only identify a facially-neutral practice which has a significant impact on a protected group. Newark Branch, NAACP v. Town of Harrison, 940 F.2d 792, 798 (3d Cir.1991). The burden then shifts to the agency to produce evidence of a business justification for his naturalization practice. Yick Wo v. Hopkins, 118 U.S. 356, 373-74, 6 S. Ct. 1064, 1072-73, 30 L. Ed. 220 (1886).

## B. DUE PROCESS OF THE LAW

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law. Pennell v. City of San Jose, 485 U.S. 1, 11, 108 S. Ct. 849, 857, 99 L. Ed.2d 1 (1988). The Supreme Court has held that the Due Process Clause governs not only the procedures by which the government may act to "deprive any person of life, liberty or property," but also "bar[s] certain government actions regardless of the fairness of the procedures used to implement them. Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed.2d 662 (1986).This concept of "substantive" due process "serves to prevent governmental power from being 'used for purposes of oppression. Planned Parenthood v. Casey, 505 U.S. 833, 846-847, 112 S. Ct. 2791, 2804-2805, 120 L. Ed.2d 674 (1992).For the proposition that "when a plaintiff alleges the loss, infringement or denial of a governmental right or benefit previously enjoyed by him, coupled with communications by government officials having a stigmatizing effect, a claim for deprivation of liberty without due process of law will lie. 8 C.F.R. § 316.10 (c) (1); 8 C.F.R. § 335.1(a) Mertik v. Blalock, 983 F.2d 1353 (C.A.6 1993) Unlike its procedural counterpart, substantive due process protects citizens from "certain government actions regardless of the fairness of the procedures used to implement them.... Daniels v.. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 665, 88 L. Ed.2d 662 (1986) There are currently two tests by which courts examine substantive due process claims. Under the first test, a plaintiff does not need to allege a violation of a specific liberty or property interest; rather, he must demonstrate that the state's conduct "shocks the conscience. Rochin v. California, 342 U.S. 165, 172, 72 S. Ct. 205, 209, 96 L. Ed. 183 (1952) Under the second test, the

plaintiff must demonstrate a violation of a specific liberty or property interest protected by the Fourteenth Amendment. Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 626-27, 67 L. Ed. 1042(1923).

## XIII.U.S CITIZEN V. U.S NATIONAL

Every certification of citizenship must be treated as granted upon condition that the government may...demand its cancellation, or unless issued in accordance with all the requirement set forth by congress. 8 U.S.C. § 1452 (a); Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990).One such statutory prerequisite is that the plaintiff was lawfully admitted to the united states for permanent resident.8 U.S.C. § 1429.Another statutory requirement is that plaintiff has been and still a person of good moral character for a period that begins with, or when he took the Oath of allegiance.8 U.S.C. § 1427 (a) (3).Congress has specially instructed that as such plaintiff who has failed to establish that he met all the requirements for naturalization, under the 8 C.F.R. § 316.2 (a) (7) and 316.10 (a) (1), (a) (2) and (b) (3) (III).Therefore has met the requirement under 8 U.S.C. § 1452 (b);1101 (a) (22) (B) and 1101 (a) (3) of the Immigration and Nationality Act ("INA"); Mantin ,244 F.2d 204, 206 (9th Cir.).

### A. SWORN ALLEAGIANCE TO THE UNITED STATES.

In Lee v. Ashcroft, 216 F. Supp.2d 51 (E.D.N.Y.2002) the court ruled that a person that demonstrate "permanent allegiance" to the united states, and thus attain "National Status"by applying for his citizenship and completing said application with the objective demonstrations of allegiance. Omolo v. Gonzales, 452 F.3d 404 (5th Cir.2006). The term National came into general use when the united States acquired territories outside its continental limit and accord inhabitants as a status that was not equivalent to citizenship,but that nonetheless conferred certain rights and responsibilities as a National of the United States,and such plaintiff is deemed to owe allegiance , and the modern term of National ,long term residency and personal claims, or belief that one one owes "allegiance are clearly insufficient standing alone. At the minimum ,its appears that to qualify as a "U.S National", the plaintiff must demonstrated his allegiance by applying for citizenship, and after committed an unlawful acts,however, he has not failed to establish the reformation of his character, more specifically, his conduct and acts

prior to the statutory period maybe considered for the purposes of the moral character determination ,if the conduct during the statutory period does not reflect that he has been reform of character form earlier period,or if the earlier conduct, and acts appears relevant to a determination of his moral character. 8 C.F.R. § 316.10 (2) (b) (v);316.10 (c) (1) .The application for citizenship is the step in the process of acquiring the full rights of citizenship. United States v. Dupaquier, 74 F.3d 615, 618 (5th Cir.1996). Recent analogous cases also support the plaintiff position as to whether National status pertain to him, certainly under § 1101 (a) (22) (B) permits a broader interpretation. Courts agreed that the lengthy residency alone does not suffice to confer the status of National. see,e,g .Sierra-Reyes v. INS, 585 F.2d 762, 764 n.3 (5th Cir. 1978) (rejecting National status of 20 -years U.S permanent resident convicted of heroin distribution who has register for selective services but never applied for citizenship);Oliver v. I.N.S., 517 F.2d 426, 427-28 (2d Cir.1975).Recently,however,at least two courts of appeals have held that an application for citizenship constitutes objective evidence of permanent allegiance in satisfactory of the definition of National Status in § 1101 (a) (22) (B) .see, Hughes v. Ashcroft, 255 F.3d 752, 756 (9th Cir.2001) (rejecting petitioner's claim of national status because he could not demonstrate minimal requirement of either by birth in U.S Territory,acquire citizenship through his parents or application for U.S citizenship); United States v. Morin, 80 F.3d 124, 126-27 (4th Cir.1996) (finding that a Native Mexican who applied for U.S citizenship was a National under § 1101 (a) (22) (B) for the purpose of 18 U.S.C. § 2332). Morin is relevant to this action herein, because that case is not in removal,in Morin, the court of appeals for the fourth circuit held that a permanent resident who applied for for U.S citizenship was a "U.S National" for the purpose of a Federal statute that criminalized the murder of a National of the United states; Morin, 80 F.3d At 126 (citing 18 U.S.C. § 2332).The fourth circuit found that the permanent resident's application for citizenship was the most compelling evidence of permanent allegiance to the united states short of citizenship itself,and incorporated the definition of "U.S national" ,congress presumably intended that the identical languages should meant the same thing in both statutes,and the court concluded that long term residency alone does not suffice to confer the status of national,there must be some objective demonstration of permanent allegiance, indeed which is required to sign and

acknowledgment of his willingness and ability to take an Oath of allegiance to the United States. 8 U.S.C.A. § 1448; Savorgnan v. United States, 1950, 338 U.S. 491, 494 note 3, 496 note 5, 70 S. Ct. 292, 295, 94 L. Ed. 287, the Court held, without comment, that signing the following constituted the taking of an "oath of allegiance" sufficient to effect expatriation: 'I, Rosetta Andrus Sorge, born an American citizen, declare I renounce and in truth do renounce my American citizenship, and swear to be faithful to H.M. the King of Italy and Albania, Emperor of Ethiopia to his royal successors, and to loyally observe the statutes and other laws of the Kingdom of Italy, which is the contrary to the case presenting to the court while the plaintiff signing the following constituted the taking of an "oath of allegiance permanent allegiance to the united states and denounce and in truth do renounce citizenship.

## B. CONGRESS INTENT IN REGARD TO NATIONAL STATUS

Applying the principal of the statutory construction, the court task is to determine congress intent " beginning with the language"(White v. Lee, 227 F.3d 1214, 1231 (9th Cir.2000)).If the language is ambiguous, the court looks to the legislative history and underlying public policies of the statute. the court read the words of the statute in their context and with a view to their place in the overall statutory scheme. Bowen, 487 U.S. at 900, the express purpose of § 1101 (a) (22) (B) is very broad. Fitzgerald v. Pan Am, 229 F.2d 499 (2d Cir. 1956). For instance citizenship is not the sine qua no of nationality. A national of the united states may also be a person who, though not a citizen of the united states,owes permanent allegiance to the united states , with respect to the "permanent allegiance",congress intent in enacting it, is express,if somewhat opaque. Its terms and exceptions are geared to reduce or eliminate abusive practice while ensure that "minor Criminals who applied for their citizenship are not competitively disadvantaged.(§ 1101 (a) (22) (B), this is the best way to harmonize the two section superfluous, plaintiff draws from the parenthetical phrase a manifesting of congress intent to only include some of the statute in § 1101 (a) (22) (B) ,and to regard the statute as divisible in character ,or the appropriate interpretation,the question to ask is only whether congress intended to preclude minor criminals that show permanent allegiance is fairly discernible in the statutory scheme. Congress presumably intended that the identical

language should have meant the same in both statutes, see, 18 U.S.C. § 2331, 8 U.S.C. § 1101 (a) (22) (B) ,and the effect of this language appeared to allow the plaintiff the retention requirement merely by filling out a naturalization application, the intent which of which is renunciation previous citizenship. Indeed, owes "permanent allegiance, so there is no reason for it to hear arguments about congress intent to enact the law. The fourth circuit has clarified congress intent by stating that "a native Mexican who applied for U.S citizenship was a national under the statute,likewise, two other courts of appeals held that an application for citizenship constitutes objective evidence of permanent allegiance in satisfaction in this particular case,it cannot employ equitable principal to reach a particular result, despite the statute's terms and in contravention of congress intent as the plaintiff requests. A court may also contrast in the same act to decipher congress intent with respect to an undefined term. Negusie v. Holder, 555 U.S. 511,the court has recognized that statutory interpretation is a multifaceted enterprise,ranging from a precise construction of statutory language to a determination of is best effective statutory objective.

In Solem, 465 U.S At 470, the court stated , however, that explicit language of cession ans unconditional compensation are not prerequisite for finding of diminishable. Moreover, no particular set of words must be present for the court to find that there has been a diminishment. Hagen v. Utah, 510 U.S. 399, 416.In determining congressional intent, the court should examine the face of the actor statute, the surrounding circumstances and the legislative history and the court must give effect to congress's intent in passing the act of issue. Yonkton Sioux tribe,522 U.S At 357.Simply, the provisions , or the statute at question follows the Chevron framework. The starting point of the analysis is the statutory language of § 1101 (a) (22) (B) ,and the if the plain meaning of the text of the statute is silent,or ambiguous, the court must defer to the agency's interpretation so long as it is based on a reasonable reading of the statute. Having decided that Chevron deference applied here, the court must being with the first step of the analysis which is whether congress has directly spoken to the precise question at issue,such that the intent of congress is clear. Chevron ,467 U.S At 842-43.If the intent of congress is clear, that is the end of the matter, for the court must give effect to the unambiguously expressed intent of congress. If,However,the statute is silent or ambiguous with respect to the specific issue,congress has not spoken clearly, and a permissible agency

interpretation of the statute merits judicial deference. Thus, the objective of Chevron step one is not to interpret and apply the statute to resolve this claim, but to determine whether congress' intent in enacting § 1101 (a) (22) (B) was so clear to foreclose any other interpretation. King v. Burwell, 759 F.3d 358 (4th Cir.2014).Under the first step of Chevron, a reviewing court is to employ traditional tools of statutory constructions to determine whether congress addresses the precise question of issue. Nat'l Elec. Mfrs. Ass'n v. U.S. Dept. of Energy ("NEMA"), 654 F.3d 496, 504 (4th Cir.2011) (quoting Chevron, 467 U.S. at 842-43, the court therefore, begins this analysis with the text and structure of the statute. Cabell Huntington Hosp., Inc. v. Shalala, 101 F.3d 984, 990 (4th Cir.1996).After all, the plain language of the statute is the most reliable indication of congressional intent. Schafer v. Astrue, 641 F.3d 49, 57-58 (4th Cir.2011).Additionally, the fourth circuit has described legislative history as one of the traditional tools of interpretation to be consulted at **Chevron's** step one. Thus, the court begins it Chevron step one inquiry into congress's intent as it must, from the fundamental canon that statutory interpretation begins with the language of the statute itself. Butler v. West, 164 F.3d 634, 642 (D.C.Cir.1999) Here ,as mentioned ,the relevant statute is § 1101 (a) (22) (B).Specially, it provides that"

> **The term of national of the united states means (A) a citizen of the united states ,or (B) a person who, though not a citizen of the united states,owes permanent allegiance to the United States."**

That is a mere linguistic distinction between a citizen and a National,and congress used a double contention when it used the phrase that it should not be considered the same as a citizen of the United states .8 U.S.C. § 1101 (a) (3).The correct interpretation of this phrase is as follow: On December 24, 2008, immediately prior to admission to citizenship, the plaintiff took the oath which, at that time, read:

> **'I hereby declare, on oath, that I absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which I have heretofore been a subject or citizen; that I will support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I take this obligation freely without any mental reservation or purpose of evasion: So Help Me God.'**

Indeed,owes permanent allegiance ,or sovereignty of whom the plaintiff was before a subject or citizen.

Our problem is to construe what congress has written, congress expresses its purpose by words , particularly, "subject" in the last paragraph , to identify the intent to become a citizen is a national in certain cases 8 C.F.R. § 316.10 (c) (1) ,and we will not construe the statute in such manner, because we are required to interpret statutory language as written and are not permitted to add words of our own choosing, to be clear, other provisions with allegiance matter demonstrate that congress knew how to specifically and affirmatively directly whom owes permanent allegiance to the United states ,therefore,§ 1101 (a) (22) (B) ,merely tells the intent to become a citizen is indicated by the evidence of the reformation of the character ,and signing to renounce the former nationality which results in being granted "National Status".Thus, exclusivity with no language to indicate that intent to restrict. if congress intended to limit "National status" ,it could have done so explicitly using language similar to what it used in § 1101 (a) (22) (B); Jama 543 U.S At 335.The arguments are more persuasive now, the Supreme court has long held that the expressio unius canon does not apply unless it is fair to suppose that confess considered the unnamed possibility ,and meant to say no to it,and the canon can be overcome by contrary not meant to signal any exclusions. Barnhart v. Peabody Coal Co., 537 U.S. 149."We do not read the enumeration of one case that exclude another unless it is fair to suppose that congress considered the unnamed possibility and meant to say no to it".Thus,the statutory construction BIA interpretation is arbitrary to read the words of the statute is the context contrary to congress intent. In Morin, Fernandez is a national of the United states because his permanent allegiance to the united states was established by virtue of his application for naturalization. Although the Immigration Judge (IJ) stated that ,he agreed with the better analysis in the nigh circuit decision in Perdomo-Padilla v. Ashcroft, 333 F.3d 964 (9th Cir.2003) ,and the majority opinion in the decision in Daly v. Gonzales, 129 Fed. Appx. 837, 840 n. 3 (4th Cir.2005) (unpublished) both of which held that 8 U.S.C. § 1101(a) (22) (B) does not itself provides a means of acquiring "U.S National status" ,he believed that Morin compelled the conclusion that Fernadez is an unremovable "U.S National".The (IJ) concluded that ,his decision by citing approvingly the dissenting opinion in Daly, which disagreed with the majority's distinguished of Morin based on its criminal context. see,Daly, 129 Fed. Appx. At 845 ( Duncan, J.,dissenting) (quoting "I do not agree that the existence of

different context give us license to interpret the exact language in § 1101 (a) (22) differently in different cases").Citing its recent decision in the matter of Navas-Acosta, 23 I. & N. Dec. 586, 588 (BIA 2003) ,the BIA rejected Fernandez argument that an alien may become a U.S National through means other than Birth and full Naturalization. Also,like the Daly majority, the BIA distinguished Morin on the basis of its criminal context ,and thus treated as dicta Morin's interpretation of § 1101 (a) (22) .As the plaintiff discusses the interplay between Morin's interpretation of the ("INA") and the deference that is owed under Chevron to the BIA's contrary, post -Morin interpretation, then we must ultimately conclude that Chevron dictates that we should not follow the BIA interpretation if it is arbitrary, capricious, or manifestly contrary to the INA ,or congress 's intent , and me must conclude that the BIA's interpretations ,though contrary to Morin's , which is not permissible and thus, is not entitle to deference. In turn, the word permanent is defined to mean a relationship of continuing,or lasting nature, as distinguished from temporary. 8 U.S.C. § 1101(a) (31) .Congress did ,however, expressly described the circumstances under which a person demonstrate a relationship of continuing ,or lasting nature with the united states, in other words, congress has specified whether § 1101 (a) (22) (B) describes ,rather than confers ,whom owes permanent allegiance to the united states. It is apparent that form the discussion above the Morin court did arrive at its construction of § 1101 (a) (22) by of way of Chevron ,thus it did not address the BIA interpretation ,in which the BIA's held that the Acquisition of Nationality for a non-citizen national is not governs by § 1101 (a) (22) ,instead by 8 U.S.C. § 1408 ,that particular provision describing categories of other type of non-citizen national ,which is contrary to the case in discussion,or congress intent. Also the BIA concluded that a non-citizen may become a U.S national only by Completing the Naturalization process,by birth to U.S national ,or by birth in an outlying possession of the united states,It is appears the BIA missed one of them, for deterring statutory violations,the question we must ask whether any any of the other National has to prove that they owes allegiance to the United states in order to claim "National Status". As the discussion beings herein ,notably, to clarify the BIA's arbitrary, capricious interpretation of the statute,whether,we must defer under Chevron to the BIA's interpretation f the INA's nationality provision: 1) whether in the INA, Congress has directed that courts interpret

the INA's nationality provisions, including § 1101 (a) (22) ,without affording Chevron deference to the BIA's views:and 2) whether we must follow Morin's interpretation of § 1101 (a) (22) ,or the BIA's contrary,post -Morin interpretation ,see, Alwan v. Ashcroft, 388 F.3d 507, 510 (5th Cir.2004), where the court must review claims of nationality de novo without affording Chevron deference to the BIA's interpretation of the ("INA"),the Alwan court held that it owed o deference to the BIA's determination of Nationality claims because congress ,though 8 U.S.C. § 1252 (b) (5) ,explicitly places determination of Nationality in the hands of the courts ,and thus has not consigned them to the discretion of the BIA. Id At 510.According to the Alwan court § 1252 (b) (5) frees courts from applying Chevron in deciding Nationality claims irrespectively of whether any ambiguity exists in the INA language that would typically required agency deference. Children's Habilitation Ctr., Inc. v. NLRB, 887 F.2d 130, 132 (7th Cir.1989).Both the Eleventh and Ninth Circuits have joined in this conclusion that § 2152 (b) (5) frees courts from applying Chevron in deciding Nationality claims. Sebastian-Soler v. U.S. Att'y Gen., 409 F.3d 1280, 1285 (11th Cir.2005) (percuriam) (citing § 1252 (b) (5) and Alwan did not applied Chevron to the BIA's interpretation);Hughes, 255 F.3d at 757-58 (citing § 1252 (b) (5) as proof that congress did not grant discretion to the BIA's to decide question of law related to Nationality);other circuit have implicitly sanctioned such reasoning, deciding nationality claims without addressing the issues of deference to the BIA. see, e.g Abou-Haidar v. Gonzales, 437 F.3d 206, 207 (1st Cir.2006) (interpreting § 1101 (a) (22) 's definition of nationality of the United states de novo without considering the BIA's interpretation).§ 1252 (b) (5) provides the following:

> **Treatment of nationality claim (1) court determination:if no issue of fact if the plaintiff claims of to be a National of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material facts about the plaintiff's nationality is presented ,the court should decide the Nationality claim. (2) Transfer: if issue of fact if the plaintiff claims to be National of the united states ,and the court of appeals finds a genuine issue of material fact about the plaintiff's Nationality is presented, the court shall transfer the proceeding to the district court of the united states for the judicial district in which the plaintiff resides for a new Hearing on Nationality claims and a decision on that claim as if an action had been brought in the district court under § 2210 of tile 18.(3) Limitations on determinations:the plaintiff may have such claims decided only as provided in this paragraph. 8 U.S.C. § 1252 (b) (5).**

In the same token,there remains the question of whether this court must follow Morin's interpretation of § 1101 (a) (22) or the BIA 's contrary interpretation. Not all differences between and **Morin** and the plaintiff ,and he would not have to establish good moral character as he provided direct evidence of reformation,and rehabilitation occurred prior ,or part to the beginning of the statutory period,and the proof of the denial of his application for naturalization in violation of the constitution, for deterring statutory violations.8 C.F.R. §§ 316.10 (2) (b) (v);316.10 (c) (1).Plaintiff prays this court Granting his citizenship for the for deterring statutory violations,apply Morin and declare him to have attained "U.S National Status"and order the BOP to act consistently .Thus, the facts presented by the plaintiff of his Permanent allegiance to the United States is sufficient to merit "National Status" in accordance with § 1452 (b), merely set forth procedure for non-citizen Nationals to obtain Certification from the Secretary of state attesting to plaintiff's status. Nevertheless, this court has jurisdiction to review claim that he is a "U.S National and thus not an alien subject to deprivation of privileges by the BOP . 8 U.S.C. § 1101 (a) (3);see,e.g Scales v. INS, 232 F.3d 1159, 1163 (9th Cir.2000); 8 U.S.C. § 1252 (b) (5) (A), which requires the court of appeals to decide the issue ,if the plaintiff claim to be a National f the United States ,and the facts...as here are not disputable. 8 U.S.C. § 1421 (c) ,provides that"

> **whose application for naturalization is denied may seek de novo review in a district court,which shall make its own findings of facts and conclusions of law ,and at the plaintiff request, conduct a hearing de novo".**

The issue in this case was initially straightforward. Under 8 U.S.C.§ 1429, the Attorney General of the United States may consider naturalization applications of aliens against whom removal proceedings are pending. We were asked to decide whether a district court has jurisdiction under 8 U.S.C. § 1421(c) to review the denial of a naturalization application when that denial was not based on § 1429 (i.e., there is not , apparently, a pending removal proceeding at the time the naturalization application was denied).The Immigration Act of 1990 transferred jurisdiction to consider naturalization applications from district courts to the Attorney General. Pub. L. No. 101-649, § 401, 104 Stat. 4978. While the Attorney General now has the sole authority to naturalize aliens, 8 U.S.C. § 1421(a), he or she (like district courts under the prior law) may not consider an application for naturalization if

there is pending against the applicant a removal proceeding pursuant to a warrant of arrest. 8 U.S.C. § 1429. But no mention is made of what district courts may do in § 1429. They may review denials of naturalization petitions,without regard to the basis for the denial. 8 U.S.C. § 1421(c). Thus it is an open question whether a district court has jurisdiction under § 1421(c) to review the Attorney General's denial of a naturalization petition based on § 1429. Adding additional complexity to this area is that, since the 1990 amendment, the Attorney General has entertained petitions for naturalization and ruled on their merits--rather than dismissing them for lack of jurisdiction due to pending removal proceedings--in at least four cases in addition to Zayed v. United States, 221 F. Supp.2d 813 (N.D.Ohio 2002) ; Tellez v. INS, 91 F. Supp.2d 1356 (C.D.Cal.2000). The only possible authority that we find for the Attorney General to do this is the 1975 decision of the Board of Immigration Appeals entitled Matter of Cruz, 15 I. & N. Dec. 236, 1975 WL 31486 (1975). There the BIA held that, if an alien can establish prima facie eligibility for naturalization, he can move to have removal proceedings terminated under 8 C.F.R. § 242.7. But Cruz was decided prior to the 1990 statutory amendments, and the BIA based its conclusion on the fact that "neither we nor immigration judges have authority with respect to the naturalization of aliens." 15 I. & N. Dec. at 237. But with the Attorney General having sole authority to naturalize aliens since 1990 under 8 U.S.C. § 1421(a), is Cruz still viable? All of this spawns many questions.(1) Does the Attorney General view Cruz as continuing authority for considering the merits of naturalization petitions in the face of pending removal proceedings? If not, does it have any other authority to do so? (2) If the Attorney General derives no authority from Cruz or elsewhere for considering the merits of naturalization petitioners in the face of pending removal proceedings, why does it continue to consider those petitions on the merits? (3) Did the Attorney General consider the merits of Apokarina's naturalization application as part of the discretionary administrative process enabling termination of removal proceedings under Cruz? (If the Attorney General is considering the merits of his application notwithstanding limits on his jurisdiction imposed by 8 U.S.C. § 1429, then the case for the District Court's jurisdiction to review the Attorney General's decision is stronger.) (4) What is the effect, if any, of the repeal of 8 C.F.R. § 329.2(f), on the Attorney General's policy regarding Cruz (5) Were removal proceedings

against Apokarina in fact pending at the time he filed his naturalization application? In this context, we remand this case for further proceedings consistent with this opinion a result of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002), the INS has ceased to exist as an agency within the Department of Justice and its enforcement functions have been transferred to the Department of Homeland Security. For convenience, we refer solely to the INS throughout this opinion) Apokarina does not challenge this assertion on appeal-as noted, he stated in his naturalization application that removal proceedings were pending. No argument or briefing was presented to us on the question whether, during the period between the time that removal proceedings are administratively closed and the time that those proceedings are reopened, they are properly deemed pending. Cruz cites no jurisdictional basis for its holding, and at a time when district courts had exclusive jurisdiction to grant or deny applications for naturalization. The Immigration Act of 1990 shifted this jurisdiction to the Attorney General, however, see 8 U.S.C. § 1421(a) (vesting the Attorney General with exclusive authority over naturalization proceedings), and under the current law district courts have jurisdiction only in cases where the INS denies an application for naturalization, see 8 U.S.C. § 1421(c), or neglects to rule on it within 120 days of conducting a naturalization interview, see 8 U.S.C. § 1447(b) See also 8 C.F.R. §§ 310.1 (Attorney General has sole authority to naturalize aliens as of October 1, 1991), § 310.4 (courts lack jurisdiction to naturalize persons whose applications for naturalization were filed on or after October 1, 1991) .Levy's case presents neither set of circumstances. Similarly, the district court cases on which he relies are inapposite because they involve district court review of the denial of applications for naturalization. See Ngwana v. Attorney General, 40 F. Supp.2d 319 (D.Md.1999) the plaintiff application, in contrast, has not yet been acted on. Indeed, it remains incomplete because the plaintiff lawyer has not provided appropriate advice in the matter, Because that the district court properly has jurisdiction over the plaintiff applications. 8 U.S.C. § 1421(c) ("stating that the court 's duty is to enforce the statute granting political rights of aliens rigidly."); Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S. Ct. 1064, 30 L. Ed. 220 (1885); Reynolds v. Sims, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed.2d 506 (1964).

## C. STATUTORY LANGUAGE IN FAVOR OF A NATIONAL

Meanwhile congress understood that the traffic violation admitted was not really serious when enacted the laws, it express the objective statutory language before us by addressing, whom should be limited when applied for naturalization in the [**community of his residence**], however with certain [**limitation**] to which he is favorably disposed toward the good order and happiness of the united states.8 C.F.R. § 316.2 (a) (7); 8 U.S.C. § 1101 (a) (31) , and congress expressed them in fashion with specific words" [**lasting nature**] , or "In other words, that just about says what we are saying by congress that the life of the plaintiff must be in danger, seriously in danger, and of a long-lasting nature,Permanent is defined at § 101(a)(31), 8 U.S.C. § 1101(a)(31), as a relationship of continuing or lasting nature, as distinguished from temporary consistent with the statutory language, simply does contemplate a claim for such plaintiff to apply for his [**identification],**Be that as it may, to find the jurisdiction over the 'person' of 'the legal authority resulting from his residency to be measured by the instrument creating that individual's and the purpose avowed for the Trust therein. Hardy v. Hardy, 217 Ark. 296, 230 S.W.2d 6; When so considered, This is a necessary mechanism to preserve Congress' intent underlying the facts concerned with a simple, private trust established for certain designated individuals, or class of persons, known, or capable of identification. 8 C.F.R. §§ 316.10 (2) (b) (v);316.10 (c) (1),in particular regulatory § 316.10 (c) (1) provides in pertinent part that :

> **Effect of the probation or parole, an applicant who has been on probation, parole, or suspended sentenced during all or part of the statutory period is not thereby preclude from establishing good moral character, but such probation, parole or suspended sentenced may be considered by the service in determining good moral character. ["an applicant will not be approved until after the parole, or sentence has been completed"]**

In addition to stating Congress' intent to place or use a period between the two paragraphs by using, or where a statute is enacted in [**general terms**] sufficiently broad to apply to more than one applicants outside as well as within the constitutional jurisdiction of Congress, the statute cannot be limited to one applicant' when its involves circumstances as would distinguish between a ["**U.S nationa**l"] and ["**U.S citizen**"], who may preclude from applying to [**certain identification**] ,or full implementation of the Voting Rights Act of 1965 (42 U.S.C.A. §

1973 .) 8 U.S.C. § 1101(a) (3);and which indicated determination by Secretary of State that the Applicant for certificate of national status may possess a valid U.S. Passport. 22 U.S.C.A. § 2705 as evidence of the Application for certificate of identity; 8 U.S.C.A. § 1503 (b) and such applicant may not denied of his rights and privileges as a "U.S national".8 U.S.C.A. § 1503 (a).The plaintiff's subsequent action for a declaration of American citizenship and an order requiring the Secretary to issue him a United States passport. United States v. Pluta, 176 F.3d 43, 50-51 (2d Cir.1999). Secretary's interest in properly determining plaintiff's citizenship was an entirely federal concern, and Secretary had discretion to require evidence of "oath of allegiance" granting a passport. Garcia v. Clinton, 915 F. Supp. 2d 831 (S.D. Tex. 2012), Immigration and Nationality Act, § 360, 8 U.S.C.A. § 1503; State Department Basic Authorities Act of 1956, § 33, 22 U.S.C.A. § 2705,This in turn requires an examination of Congress' intent in enacting. 8 U.S.C.A. § 1101 (a) (22). That such the plaintiff, who may thought not a citizen of the United States ,however, requires appropriate [**protections**] under the laws. 8 U.S.C.A. § 1422;1452; 18 U.S.C.A. § 2331;2332.There must have been some act by which the plaintiff purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed.2d 1283 (1958). That "it is essential in this case that where the act has been deprived for the purpose of discrimination, or favoritism of any kind. Shultz v. Wheaton Glass Co., 421 F.2d 259 (3rd Cir. 1970).But in seeking to achieve this substantial purpose, with discrimination against aliens, Thus invoking benefits and protections of its laws .Marston v.Gant, 351 F.Supp.1122.

## CONCLUSION

WHEREFORE, plaintiff prays that the Court issues an order granting his motion for naturalization, and as well as granting his citizenship consistent with the laws of congress as it applicable to the plaintiff in this case and direct ("USCIS') to show cause why the relief sought after or any further relief within the discretion of jurisdiction and the business of the appeal office should not be granted, and any other relief the court may deems proper and just.

Respectfully Submitted,

Dated.~~07/10/2017~~ 01|05|2018

---------------------------------

**Manetirony Clervrain**
Reg # 96396004
Adams County Correctional Center (ACCC)
P.O BOX 1600
Washington, Ms 39190

## CERTIFICATE OF SERVICE

The plaintiff hereby certifies that he has sent a true and correct copy of the foregoing document by first class prepaid U.S postage on the --~~07~~ 01-----day of --~~14~~ 05------ 201~~7~~8 via the internal inmate legal mail system at Adams county correctional Center (ACCC), Washington, Mississippi, P.O BOX 1600, Washington, Ms 39190 To the appropriate prison official for service and delivery to the address below:

~~U.S. DISTRICT COURT~~
~~DISTRICT OF COLUMBIA~~
~~333 CONSTITUTION AVE., NW~~
~~WASHINGTON, DC 20001-2802~~

United State District Court
For the District of Kansas
444 SE. Quincy
Topeka, Kansas, 66683

Respectfully Submitted,

Dated~~07/10/2017~~

---------------------------------

~~**Manetirony Clervrain**~~
Reg # 96396004
Adams County Correctional Center (ACCC)
P.O BOX 1600
Washington, Ms 39190